18-CV-7854 (RA)(KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELVIR DELIJANIN,
*on behalf of himself, FLSA Collective Plaintiffs
and the Class*,

Plaintiff,

-against-

WOLFGANG'S STEAKHOUSE INC., WOLF
EASTSIDE LLC d/b/a WOLFGANG'S
STEAKHOUSE, ZMF RESTAURANTS LLC
d/b/a WOLFGANG'S STEAKHOUSE AT PARK
AVENUE, WOLF GOTHAM LLC d/b/a
WOLFGANG'S STEAKHOUSE – GOTHAM
HOTEL, WOLF ON BROADWAY LLC
d/b/a WOLFGANG'S STEAKHOUSE,
WOLF AT TRIBECA INC. d/b/a WOLFGANG'S
STEAKHOUSE TRIBECA, PETER ZWEINER,
WOLFGANG ZWEINER, ZIZO DOE (last name
unknown), ARAMO DOE (last name
unknown), and JOHN DOES 1-10,

Defendants.

**DEFENDANTS' MEMORANDUM OF
LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR
CONDITIONAL COLLECTIVE
CERTIFICATION**

**MELTZER, LIPPE, GOLDSTEIN
& BREITSTONE, LLP**
Attorneys for the Defendants
190 Willis Avenue
Mineola, N.Y.  11501
(516) 747-0300

Gerald C. Waters, Jr., Esq.
Jonathan D. Farrell, Esq.
Nicholas P. Melito, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

POINT I ............................................................................................................................... 3

    CONDITIONAL COLLECTIVE ACTION SHOULD NOT
    BE CERTIFIED ........................................................................................................ 3

    A.    Conditional Certification Standard ............................................................. 3

    B.    Plaintiff Cannot Establish A Common Policy or Plan Violative of
        the FLSA .......................................................................................................... 5

        a.    Plaintiff Received Notice Of The Tip Credit ................................... 5

        b.    Plaintiff and the Putative Collective Were Paid in Excess
            of the Minimum Wage Under the FLSA ......................................... 6

        c.    The USDOL'S Opinion Letter Reaffirmed Employers Are
            Entitled to Take a "Tip Credit" for Non-Tip Generating
            Duties ................................................................................................. 6

        d.    There is No Common Policy or Plan With Respect to Off-
            The-Clock Work ................................................................................ 9

        e.    Plaintiff Was Paid Proper Overtime Under The FLSA. ............... 10

    C.    Plaintiff Is Not Similarly-Situated to the Putative Collective
        Members ......................................................................................................... 12

    D.    Plaintiff Fails to Establish Defendants Operate as a Single
        Integrated Enterprise. ................................................................................... 14

        a.    Plaintiff Cannot Satisfy The Integrated Enterprise Test ............. 14

    E.    Conditional Certification of the Instant Action Will Not Promote
        Judicial Efficiency ........................................................................................ 17

    POINT II ................................................................................................................. 18

    ANY NOTICE OF PENDENCY, AND PUTATIVE PLAINTIFF
    CONTACT INFORMATION REGARDING SAME, SHOULD
    BE LIMITED ........................................................................................................... 18

    A.    The Opt-In Notice Period Should Be Limited To Three Years
        Preceding the Filing Of The Complaint ..................................................... 19

B.     Plaintiff's Receipt of Opt-In Contact Information Must be Limited to Only the Names and Last-known Addresses of Putative Collective Members ................................................................................20

C.     Consent Forms Should Be Mailed To The Clerk Of The Court ................21

D.     Equitable Tolling Is Not Warranted ..........................................................22

E.     Form of the Notice ....................................................................................23

CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

Alvarez v. Schnipper Restaurants LLC,
   No. 16 Civ. 5779 (ER), 2017 WL 6375793 (S.D.N.Y. Dec. 12, 2017) ................................... 19

Amendola v. Bristol-Myers Squibb Co.,
   558 F. Supp. 2d 459 (2d Cir. 2008) ....................................................................... 23

Andon v. SDG Properties, Inc..
No. 17 Civ. 7876 (ALC)(KHP), 2018 WL 3970910 (S.D.N.Y. Aug. 20, 2018) ............... 3, 20, 23

Andrews v. Cruz,
   No. 04-CV-0566 (PAC)(RLE), 2006 WL 1984650 (S.D.N.Y. July 14, 2006) ....................... 21

Apolinar v. R.J. Rest., LLC,
   2016 WL 2903278 (S.D.N.Y. May 18, 2016) ........................................................... 15

Arena v. Plandome Taxi, Inc.,
   No. 12 Civ. 1078 (DRH)(ETB), 2013 WL 1748451 (E.D.N.Y. Apr. 23, 2013) .................... 22

Barfield v. New York City Hlth. and Hosp. Corp.,
   537 F.3d 132 (2d Cir. 2008)................................................................................ 15

Benavides v. Serenity Spa NY Inc.,
   166 F. Supp. 3d 474 (S.D.N.Y. 2016)................................................................. 5, 13

Brown v. Barnes and Noble, Inc.,
   252 F. Supp. 3d 255 (S.D.N.Y. 2017)................................................................... 4, 5

Camara v. Kenner,
   No. 16 Civ. 7078 (JGK), 2018 WL 1596195 (S.D.N.Y. Mar. 29, 2018) ........................ 14, 17

Cowell v. Utopia Home Care, Inc.,
   No. 14 Civ. 736 (LDW)(SIL), 2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016).......................... 18

Eng-Hatcher v. Sprint Nextel Corp.,
   No. 07 Civ. 7350 (BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ............................ 9, 11

Fasanelli v. Heartland Brewery, Inc.,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007)................................................................... 21

Garriga v. Blonder Builders Inc.,
   No. 17 Civ. 497 (JMA)(AKT), 2018 WL 4861394 (E.D.N.Y. Sept. 28, 2018) ................ 12, 13

Gorey v. Manheim Servs. Corp.,
788 F. Supp. 2d 200 (S.D.N.Y. 2011)..................................................................14

Guillen v. Marshalls of MA, Inc.,
841 F. Supp. 2d 797 (S.D.N.Y. 2012)....................................................................4

Hamadou v. Hess Corp.,
915 F. Supp. 2d 651 (S.D.N.Y. 2013)..................................................................19

Hart v. Rick's Cabaret Int'l, Inc..,
967 F. Supp. 2d 901 (S.D.N.Y. 2013)..................................................................14

Herman v. RSR Sec. Servs. Ltd.,
172 F.3d 132 (2d. Cir. 1999)................................................................................15

Hernandez v. City of New York,
No. 16 Civ. 3445 (RA), 2017 WL 2829816 (S.D.N.Y. June 29, 2017).....................4

Hernandez v. The Fresh Diet Inc.,
No. 12 Civ. 4339 (ALC)(JLC), 2012 WL 5936292 (S.D.N.Y. Nov. 21, 2012) ......................22

Hypolite v. Health Care Services of New York Inc.,
256 F. Supp. 3d 485 (S.D.N.Y. 2017).....................................................................6

Ikikhueme v. CulinArt, Inc.,
No. 13 Civ. 293 (JMF), 2013 WL 2395020 (S.D.N.Y. June 3, 2013).....................12

Iriarte v. Café 71, Inc.,
2015 WL 8900875 (S.D.N.Y. Dec. 10, 2015) .......................................................21

Jamie Urtubia v. Ba Victory Corp.,
857 F. Supp. 2d 476 (S.D.N.Y. 2012)...................................................................20

Khan v. Airport Mgmt. Servs., LLC,
No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ...............22

Korenblum v. Citigroup, Inc.,
195 F. Supp. 3d 475 (S.D.N.Y. 2016).....................................................................4

Lundy v. Catholic Health System of Long Island Inc.,
711 F.3d 106 (2d Cir. 2013)..................................................................................11

Michael v. Bloomberg L.P.,
2015 WL 1810157 (S.D.N.Y. Apr. 17, 2015)........................................................21

Murray v. Miner,
    74 F.3d 402 (2d Cir. 1996) ................................................................................... 14

Olvera v. Bareburger Grp. LLC,
    73 F. Supp. 3d 201 (S.D.N.Y. 2014) ..................................................................... 14

Paguay v. Barbasso, Inc.,
    2012 WL 2914288 (S.D.N.Y. July 17, 2012) ......................................................... 20

Reyes v. NY F&B Services LLC,
    No. 15 Civ. 2882 (LTS)(DCF), 2016 WL 796859, (S.D.N.Y. Feb. 22, 2016) ............... 4, 20

Robles v. Liberty Rest. Supply Corp.,
    No. 12 Civ. 5021 (FB)(VMS), 2013 WL 6684954 (E.D.N.Y. Dec. 18, 2013) .................. 22

Romero v. H.B. Automotive Grp., Inc.,
    No. 11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ............................. 4

Sanchez v. El Rancho Sports Bar Corp.,
    No. 13 Civ. 5119 (RA), 2014 WL 1998236 (S.D.N.Y. May 13, 2014) ................ 19, 23, 24

Sanchez v. JMP Ventures, L.L.C.,
    No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ......................... 12

Severin v. Project Ohr, Inc.,
    No. 10 Civ. 9696 (DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012) ....................... 17

Soler v. G&U, Inc.,
    568 F. Supp. 313 (S.D.N.Y. 1983) ....................................................................... 20

Soto v. ECC Indust., Inc.,
    No. 05-CV-4764 (BMC), 2006 WL 2375465 (S.D.N.Y. Aug. 14, 2006) ....................... 21

Taveras v. D&J Real Estate,
    324 F.R.D. 39 (S.D.N.Y. 2018) .............................................................. 3, 4, 12, 23

Trinidad v. Pret A. Manger (USA) Ltd.,
    962 F. Supp. 2d 545 (S.D.N.Y. 2013) .................................................................... 21

United States Department of Labor Opinion Letter,
    2018 WL 5921455 (November 8, 2018) ................................................................. 6, 7

Vasquez v. Vitamin Shoppe Industries Inc.,
    No. 10 Civ. 8820 (LTS)(THK), 2011 WL 2693712 (S.D.N.Y. July 11, 2011) ................ 20

Wang v. Palmisano,
    157 F. Supp. 3d 306 (S.D.N.Y. 2016)..................................................................... 23

Warman v. Amer. Nat'l Standards Inst.,
    193 F. Supp. 3d 318 (S.D.N.Y. 2016) ...................................................................... 4

Wright v. AARGO Sec. Servs., Inc.,
    No. 99-CV-9115(CSH), 2000 WL 264326 (S.D.N.Y. Mar. 9, 2000)..................................... 21

Zerilli-Edelglass v. N.Y.C. Trans. Auth.,
    333 F.3d 74 (2d Cir. 2003)................................................................................ 23

**Statutes**

29 U.S.C. Section 216(b) ................................................................................... 1, 3
29 U.S.C. § 206(a)(1)(C) ...................................................................................... 6

**Regulations**

29 C.F.R. § 531.56 ............................................................................................ 8
29 C.F.R. § 531.56(e)......................................................................................... 8
29 C.F.R. § 778.109 .......................................................................................... 13
29 C.F.R. § 778.110 .......................................................................................... 13

## PRELIMINARY STATEMENT

On November 27, 2018 plaintiff Elvir Delijanin ("Plaintiff") moved to conditionally certify a Fair Labor Standards Act ("FLSA") conditional collective action pursuant to 29 U.S.C. Section 216(b) (the "Collective") consisting of all "bussers, servers, runners, bartenders, and barbacks" (collectively, "Tipped Employees") employed by defendants Wolfgang's Steakhouse Inc., Wolf Eastside LLC d/b/a Wolfgang's Steakhouse, ZMF Restaurants LLC d/b/a Wolfgang's Steakhouse at Park Avenue, Wolf Gotham LLC d/b/a Wolfgang's Steakhouse – Gotham Hotel, Wolf on Broadway LLC d/b/a Wolfgang's Steakhouse, Wolf at Tribeca Inc. d/b/a Wolfgang's Steakhouse Tribeca, Peter Zweiner, Wolfgang Zweiner, Zizo Doe (last name unknown), Aramo Doe (last name unknown), and John Does 1-10 (collectively, "Defendants") for Defendants' alleged failure to pay their Tipped Employees: (1) proper minimum wages based on an alleged invalid tip credit deduction (notice and an "80/20" claim); (2) all regular and overtime hours worked off-the-clock; and (3) proper overtime premium (the "Motion").

Plaintiff fails to establish Defendants violated the FLSA, let alone had a common policy regarding same.  Plaintiff was aware of his employer's use of a tip credit as he was notified of same and it was clearly identified in the pay stubs he received.  Moreover, Plaintiff's declaration fails to identify any specific knowledge or conversation with a co-worker regarding this claim (of course him and his co-workers received written notice of same).  Further, Plaintiff's "80/20" claim regarding non-tip producing duties was recently invalidated by the United States Department of Labor ("USDOL").  Regardless, and as reflected in the payroll records attached as Exhibit I to his memorandum in support of the Motion, and the January 11, 2019 Declaration of Gerald C. Waters, Jr. ("Waters Dec.") Plaintiff was always paid above the basic minimum wage rate of $7.25 per hour pursuant to the FLSA.

Similarly, Plaintiff fails to present any non-conclusory evidence concerning his "off the clock" claim.  Of course, assuming, *arguendo*, Plaintiff did perform *de minimis* off the clock work, such work never lowered his minimum pay below the required $7.25 per hour.  Finally, with respect to Plaintiff's claim he was not paid overtime: he admits he was in fact routinely scheduled to work just thirty-eight (38) hours per week (therefore not entitled to overtime pay). And in the rare events he did work over forty (40) hours in one week, Plaintiff acknowledges "Defendants did pay some overtime on some occasions" but allegedly failed to pay <u>him</u> the proper overtime rate. Plaintiff's Memorandum in Support ("Plnf.'s Memo") at p. 10. Glaringly absent from Plaintiff's November 27, 2018 Declaration ("Plnf.'s Dec.") is any reference to any co-worker's receipt of overtime (indeed, nowhere in the declaration does it allege Plaintiff or his co-workers were not properly paid overtime).  Regardless, Plaintiff received overtime pay, of at least time and one half the FLSA minimum wage rate – thereby making his allegation baseless.

Additionally, Plaintiff fails to offer any material non-conclusory evidence to support the baseless and generalized claims he is similarly-situated to other putative collective members (<u>e.g.</u>, he fails to offer specific allegations regarding conversations with other employees or the duties those employees actually completed).  Finally, Plaintiff's attempt to expand the Collective by arguing an "integrated enterprise" exists utterly fails. Plaintiff has not established the six (6) Defendants singularly exercised any control over labor relations, and the Collective (at most) must be limited to the one (1) location at which Plaintiff worked.

Finally, should any Collective be certified (it should not) Plaintiff should only be entitled to the names and address information for putative plaintiffs for a three-year period preceding the filing of the Complaint.  Defendants request the Court direct the parties to meet and confer on the terms of the Notice of Pendency, to which Defendants have numerous objections.

## POINT I

## CONDITIONAL COLLECTIVE ACTION SHOULD NOT BE CERTIFIED

Plaintiff cannot satisfy the burden necessary to conditionally certify the Collective in that Plaintiff: (i) cannot establish a common policy, let alone a policy violative of the law exists in this case; (ii) cannot establish he is similarly-situated to putative collective members; and (iii) cannot show proceeding on a collective-action basis will promote judicial efficiency.  As noted above, Plaintiff's claims are generally premised on seeking to invalidate Defendants' use of the "tip credit" as he allegedly performed non-tip producing activities in excess of twenty (20) percent of his shift. See the Complaint ("Compl.") (ECF Doc. 1), ¶27; see also, e.g., Plnf.'s Dec. at ¶13.  However, it is well-settled that employers do not lose the ability to take a tip credit when tip eligible employees perform non-tip producing duties.  As also noted above, Plaintiff was always paid above the minimum wage rate, received notice of the tip credit and provides no evidence of improper overtime payments (let alone a common policy regarding same).

Second, Plaintiff cannot establish he is similarly-situated to the putative collective members, especially putative collective members at other restaurant locations where Plaintiff did not work. As will be detailed below, Plaintiff's declaration and Complaint simply lack the factual allegations necessary to establish he was similarly situated to other Tipped Employees.

### A.   Conditional Certification Standard

To conditionally certify an FLSA Collective pursuant to 29 U.S.C. §216(b), Plaintiff must adduce facts supporting two contentions. First, Plaintiff must establish that he "and potential plaintiffs together were victims of a common policy or plan that violated the law." Taveras v. D&J Real Estate, 324 F.R.D. 39, 41 (S.D.N.Y. 2018) (Parker, J.) (internal quotation marks and citations omitted); see also Andon v. SDG Properties, Inc.. No. 17 Civ. 7876 (ALC)(KHP), 2018 WL 3970910, at *1 (S.D.N.Y. Aug. 20, 2018) (Parker, J.) (same). Second,

Plaintiff must show he is "similarly situated with respect to his job duties/requirements, compensation, and employer policies" to the putative collective members. Romero v. H.B. Automotive Grp., Inc., No. 11 Civ. 386 (CM), 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012); see also, Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012) (denying conditional certification where the plaintiff failed to demonstrate he was similarly situated to employees of other locations) (internal quotation marks and citation omitted).

To satisfy this burden, Plaintiff must proffer "substantial allegations of a factual nexus between himself and potential opt-in[s] with regard to his employer's alleged FLSA violation." Romero, 2012 WL 1514810 at *9. Specifically, Plaintiff must show he and putative collective members had similar duties and received similar treatment in terms of minimum and overtime wage violations. Id. at *10. Since (warranted) conditional certification should occur "early in the litigation" courts make a determination regarding same through review of plaintiffs' pleadings and relevant affidavits. Warman v. Amer. Nat'l Standards Inst., 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016). While a plaintiff's "burden of proof is low, it is not non-existent – certification is not automatic." Reyes v. NY F&B Services LLC, No. 15 Civ. 2882 (LTS)(DCF), 2016 WL 796859 at *3 (S.D.N.Y. Feb. 22, 2016); see also Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016).

If Plaintiff cannot adduce facts in his pleadings/affidavits identifying how all employees are similarly situated; how a common policy violated relevant wage-and-hour laws existed; and how they came to know such information, then the Collective must be denied. See Reyes, 2016 WL 796859 at *4-5. Moreover, "plaintiffs cannot secure [conditional certification] through conclusory allegations or unsupported assertions." Hernandez v. City of New York, No. 16 Civ. 3445 (RA), 2017 WL 2829816, at *4 (S.D.N.Y. June 29, 2017) (Abrams, J.) (internal quotation marks and citation omitted); see also Taveras, 324 F.R.D. at 41 (Parker, J.) (stating plaintiff's

burden of proof "cannot be satisfied by unsupported assertions or conclusory allegations"); Brown v. Barnes and Noble, Inc., 252 F. Supp. 3d 255, 261 (S.D.N.Y. 2017) (Parker, J.) (same). "'Plaintiffs must offer something of evidentiary value to demonstrate that similarly situated employees exist and, where plaintiffs fail to meet this minimal requirement, their motion for conditional collective action certification will be denied.'" Id. (quoting Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 481(S.D.N.Y. 2016)).

### B.   **Plaintiff Cannot Establish A Common Policy or Plan Violative of the FLSA.**

Plaintiff cannot establish that he and putative plaintiffs herein were victims of a common policy or plan that violated the FLSA because: (1) Plaintiff received notice of a tip credit; (2) Plaintiff's "80/20" claim is invalid; (3) there is no policy requiring Plaintiff to perform work "off-the-clock;" and (4) no evidence of a policy concerning overtime pay is presented.

### a.   **Plaintiff Received Notice Of The Tip Credit**

Plaintiff attached numerous paystubs as Exhibit I to Plnf.'s Memo.  The paystubs show the amount of cash tips, and credit card tips received by Plaintiff for the particular week.  As such, Plaintiff cannot now argue he was unaware his wages were subject to a tip credit. Moreover, the FLSA permits oral notice of the tip credit. See USDOL Fact Sheet #15.  Further, Plaintiff, who admits during his employment he was always a "tipped employee," fails to provide non-conclusory factual support that his co-workers had no knowledge of the employer's use of a tip credit. Plnf.'s Dec. ¶4. Indeed, documentary evidence shows Plaintiff's allegations are wholly incorrect as employees did receive tip credit notice, including the Plaintiff.  See Waters Dec. Exhibit A.  Accordingly, as employees – including Plaintiff – received a tip credit notice, in multiple forms, Plaintiff simply cannot establish a common policy violative of the FLSA.

    **b.**    <u>Plaintiff and the Putative Collective Were Paid in Excess of the Minimum Wage Under the FLSA</u>

Throughout the applicable FLSA statute of limitations period, the minimum wage rate required under the FLSA was $7.25 per hour. <u>See</u> 29 U.S.C. § 206(a)(1)(C).  Here, as alleged in his Complaint and Declaration, Plaintiff was compensated $7.50 in 2016 and 2017, and $8.65 in 2018. <u>See</u> Complaint at ¶ 29[1]; <u>see also</u> Plnf.'s Dec. at ¶11. Thus, even if Defendants were not entitled to take a "tip credit," Plaintiff and the putative collective were compensated at a rate in excess of the minimum wage rate required by the FLSA. As such, no violation of the FLSA occurred during the applicable statutory period.[2]

    **c.**    <u>The USDOL'S Opinion Letter Reaffirmed Employers Are Entitled to Take a "Tip Credit" for Non-Tip Generating Duties</u>

Federal regulations "recognize that some occupations require both tip-generating and non-tip-generating duties, but do not constitute a dual job that necessitates the allocation of the tip credit to the tipped occupation only." USDOL Opinion Letter, 2018 WL 5921455 dated November 8, 2018 (the "Opinion Letter") at p. 2.  An employee who is engaged in a "dual job" is distinguishable "from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses." 29 C.F.R. § 531.56. Recognizing the difference between a "dual job" and "related duties" is not always clear, the USDOL issued guidance in the Field Occupations Handbook ("FOH") which states:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves, directed toward producing tips (i.e. maintenance and preparatory or closing activities).  For example a

---

[1] Plaintiff's Complaint and Declaration misleadingly state Plaintiff was compensated $5.00 "through" or "until" 2016; however, payroll records for 2016 reflect Plaintiff was in fact paid $7.50 per hour. <u>See</u> Waters Decl. Exhibit "B," Deljanin 2016 payroll records during the statutory period which show an hourly rate of $7.50.

[2] <u>See</u> <u>Hypolite v. Health Care Services of New York Inc.</u>, 256 F. Supp. 3d 485, 488 n. 1 (S.D.N.Y. 2017) ("The interspersed issues in the plaintiff's briefing related to . . . state law claims are irrelevant to conditional certification and need not be addressed.").

> waiter/waitress, who spends some time cleaning and setting table,
> making coffee, and occasionally washing dishes or glasses may
> continue to be engaged in a tipped occupation even though these
> duties are not tip producing, provided such duties are incidental to
> the regular duties of the server (waiter/waitress) and are generally
> assigned to the servers.

FOH § 30d00(f).

Given the disparate treatment amongst federal courts interpreting whether an employer

can avail themselves of the "tip credit" when tipped employees perform "side work," the

USDOL issued the aforementioned Opinion Letter further clarifying this issue which superseded

their statements in FOH § 30d00(f); effectively ending any right to an "80/20" claim. See

Opinion Letter at p. 4. Indeed, the USDOL stated it does "not intend to place a limitation on the

amount of duties related to a tip-producing occupation that may be performed." Opinion Letter at

p. 3.   The USDOL also noted "[d]uties listed as core or supplemental for the appropriate tip-

producing occupation in the Tasks section of the Details report in the Occupational Information

Network   (O*Net)   [http://www.onetonline.org/link/summary/35-3031.00]   or   29   C.F.R.

§ 531.56(e) shall be considered directly related to the tip-producing duties of that occupation."

Id.   Again, the USDOL placed no time limitation on the performance of such duties, "whether or

not they involve direct customer service, as long as they are performed contemporaneously with

the duties involving direct service to customers or for a reasonable time immediately **before or**

**after** performing such direct-service duties." Id. (emphasis added).

Here, Plaintiff seeks compensation at the full minimum wage rate for the exact same

duties the federal regulations and the USDOL explicitly state are related to the tipped occupation

and, thus, are subject to the "tip credit." See Compl. at ¶ 26.   In this regard, Plaintiff alleges he

was required to "set up the dining area, cut lemons and limes, transport water and soda from the

basement, polish silverware and glasses, prepare buttered breads, and make whip cream." Plnf.'s

Dec. at ¶ 13; <u>see</u> <u>also</u> Compl. at ¶ 26. Specifically, the analogous duties listed on O*Net[3] for servers, which would be subject to the "tip credit" are:

- Remove dishes and glasses from tables or counters and take them to the kitchen for cleaning;

- Clean tables or counters after patrons have finished dining;

- Prepare tables for meals, including setting up items such as linens, silverware, and glassware;

- Perform cleaning duties, such as sweeping and mopping floors, vacuuming carpet, tidying up server station, taking out trash, or checking and cleaning bathroom;

- Prepare hot, cold, and mixed drinks for patrons, and chill bottles of wine;

- Roll silverware, set up food stations, or set up dining areas to prepare for the next shift for large parties;

- Stock service areas with supplies such as coffee, food, tableware, and linens;

- Fill salt, pepper, sugar, cream, condiment, and napkin containers;

- Perform food preparation duties such as preparing salads, appetizers, and cold dishes, portioning desserts, and brewing coffee; and

- Garnish and decorate dishes in preparation for serving.[4]

Since the side work duties alleged by Plaintiff are expressly identified in the aforementioned O*Net list of waiter/waitress duties, Defendants were entitled to take a "tip credit" for time spent performing said duties. Therefore, Plaintiff simply failed to allege any violation of the FLSA. As such, no collective action should be certified.

---

[3] As referenced in the USDOL Opinion Letter, O*Net publishes a proper list of tip credit compensable side work duties.

[4] Details Report for Waiters and Waitresses, http://www.onetonline.org/link/details/35-3031.00 (last visited January 11, 2019).

### d.     There is No Common Policy or Plan With Respect to Off-The-Clock Work

Plaintiff's conclusory allegations as to the purported existence of a "common policy" requiring Tipped Employees to perform work "off-the-clock" is simply untrue.  Instead, and as it pertains to such purported "common policy," Defendants did not (and do not) have any policy requiring or permitting Tipped Employees to perform work "off-the-clock."   Significantly, Plaintiff fails to identify a single manager and/or agent of Defendants who informed him that he and other putative collective members were required (or permitted) to perform work off-the-clock.  Instead, Plaintiff asserts conclusory statements that he worked between thirty (30) and sixty (60) minutes each shift off the clock. Plnf.'s Decl. at ¶6; <u>see also</u> Compl. at ¶28.  Plaintiff does not provide any further details as to the specific times he would report to work in relation to his scheduled shifts <u>let alone details about off-the-clock work performed by putative collective members</u>.   Such vague, conclusory allegations are insufficient to conditionally certify a collective action. <u>See</u> <u>Eng-Hatcher v. Sprint Nextel Corp.</u>, No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *5 (S.D.N.Y. Nov. 13, 2009) (denying conditional and class certification in an "off-the-clock" case where the plaintiff "attempt[ed] to impute her own limited experience" to the class and the plaintiff's evidence failed to justify the size and scope of the proposed class). In <u>Eng-Hatcher v. Sprint Nextel Corp.</u>, the plaintiff submitted conclusory, over generalized affidavits[5] naming five other co-workers who also were allegedly not compensated overtime, in support of her motion for conditional certification. <u>Id.</u> at *4.   The <u>Eng-Hatcher</u> court denied plaintiff's motion for conditional certification for not only all locations nationwide, but also for

---

[5] <u>See</u> <u>Eng-Hatcher v. Sprint Nextel Corp.</u>, No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009) ("In her deposition, [the] [p]laintiff identifie[d] five other Retail Consultants by name, employed at the same stores as [the] [p]laintiff, that she claims told her that they also did not receive pay for overtime worked. [However, the plaintiff] provide[d] no details about these conversations, and provide[d] no affidavits from any other employees corroborating her claims.").

the specific location where the plaintiff worked; thus, the court ordered the FLSA portion of the case proceed on behalf of only the named plaintiff. Id. at *5.

Similarly, in the instant matter, Plaintiff's declaration failed to provide any specific details about observations or conversations with other employees regarding "off-the-clock" work. Specifically, despite mentioning Plaintiff somehow knew his co-workers were performing duties off the clock, Plaintiff failed to provide a basis for his knowledge. For example, although Plaintiff alleges he "frequently talked" to his co-workers about "Defendants' pay policies" he does not identify the date of these alleged conversations, participants in the conversation, any details regarding the alleged "off-the-clock" work, who informed Plaintiff he was required to perform side work "off-the-clock," or any witnesses to same.

Remarkably, although Plaintiff also attempts to show "off-the-clock" work occurred at the four other restaurants, he admits he never worked at any such restaurant and bases his entire knowledge on one conclusory, non-specific conversation (for which no date or participant is identified). See Plnf.'s Dec. ¶¶ 2, 16. Plaintiff does not identify the specific locations, which waiter/waitress told him about the alleged side work, or when this "off-the-clock" work occurred. As such, Plaintiff's failure to provide any specific allegations concerning alleged "off-the-clock" work, at these other restaurants, further underscores the baseless nature of his request to certify a Collective at these restaurants. Given the remarkable dearth of material allegations and the abundance of conclusory statements, Plaintiff cannot establish any policy regarding a requirement to perform "off-the-clock" work. Thus, conditional certification must be denied.

### e.       Plaintiff Was Paid Proper Overtime Under The FLSA.

As a result of Plaintiff's alleged off-the-clock work, Plaintiff alleges he sometimes worked in excess of forty hours per workweek and alleges that Defendants' failed to compensate him proper overtime. See Plnf.'s Dec. ¶¶6-8. However, Plaintiff's declaration and pleadings are

insufficient to satisfy his burden of demonstrating he and putative collective members were subject to a common policy or practice which violated the law. Plaintiff merely stated, in a conclusory fashion, that he generally worked up to four (4) hours each workweek off-the-clock which resulted in him working approximately forty-two hours per workweek, for which he was not compensated an overtime premium. Id.  Aside from not providing any details whatsoever pertaining to the alleged off-the-clock work performed, Plaintiff fails to show how he was undercompensated even if taking his allegations as true.  Regardless, a simple review of Plaintiff's payroll shows he received at least one and one half times the FLSA minimum wage rate[6] (or even his regular rate of pay, which far exceeds the FLSA rate).  Therefore no FLSA overtime claim can exist.[7]  Due to Plaintiff's conclusory statements in his declaration and Complaint, his lack of allegations concerning putative plaintiff's receipt of overtime (he does not identify any non-conclusory overtime based facts concerning his co-workers) and the simple fact he was paid at least one and one half times the FLSA minimum wage rate, Plaintiff cannot meet his burden of proof and conditional certification should be denied.

---

[6] To the extent Plaintiff is premising his minimum and overtime wage claim on the alleged "off-the-clock" work, the Court must reject this theory as it is contrary to relevant federal regulations and the Second Circuit. See 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."); see also Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 116 (2d Cir. 2013) (holding that the "FLSA does not provide for a gap-time claim even when an employee has worked overtime"). Here, by way of an example, during the pay period of February 5, 2018 to February 11, 2018, Plaintiff worked 38.09 hours and was compensated $8.65 per hour and received $844.00 in tips. Thus, during this specific pay period he earned $1,173.48. Even if we credit Plaintiff for his alleged four hours of off-the-clock work, his regular hourly rate is significantly above the applicable full minimum wage rate of $7.25 per hour.  In this regard, $1,173.48 divided by 42.09 hours equals an hourly rate of $27.88.  As such, no minimum wage violation occurred.

[7] Even if we use the example from footnote 6, above, Plaintiff's total weekly compensation exceeded the overtime requirements pursuant to the FLSA.  In this regard, even assuming his hourly rate was $27.88 for the pay period of February 5, 2018 to February 11, 2018, Plaintiff would only be entitled to compensation in the amount of $1,144.33 (($27.88 x 40 hours = $1,115.20) +  (($27.88 / 2) x 2.09 overtime hours = $29.13)). See 29 C.F.R. § 778.110. Here, Plaintiff actually received $1,173.48 during this pay period; thus, Plaintiff received all wages required pursuant to the FLSA.

### C.      Plaintiff Is Not Similarly-Situated to the Putative Collective Members

Plaintiff failed to establish any violation of the FLSA – as such the Court's analysis may stop here. However, assuming, *arguendo*, that any violation was established, Plaintiff cannot show he is similarly situated to the putative collective members. Your Honor previously recognized that "[c]ourts in this Circuit often restrict the scope of a proposed collective or deny conditional certification because of a failure to identify other co-workers by name and title, provide the specifics of conversations with those employees, or note details of other employees' working conditions and hours." Taveras, 324 F.R.D. at 45 (Parker, J.) (collecting cases); see also Sanchez v. JMP Ventures, L.L.C., No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification because plaintiff failed to provide any detail as to his observations of and conversations with other proposed members of the putative collective, including the location or date of the conversations/observations, and describing the plaintiff's declaration as "generalized," "similar[ ] to the complaint," and containing "precisely the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient"); Ikikhueme v. CulinArt, Inc., No. 13 Civ. 293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (denying conditional certification where plaintiff offered only his single declaration with "unsupported assertions" and no specific information about other employees).

Ironically, in another case handled by Plaintiff's counsel (which was heavily cited in Plnf.'s Memo), Plaintiff's counsel presented the same type of insufficient generalized declaration in support of a broad collective action which involved multiple locations. See Garriga v. Blonder Builders Inc., No. 17 Civ. 497 (JMA)(AKT), 2018 WL 4861394, at *4-5 (E.D.N.Y. Sept. 28, 2018). In denying the request for conditional certification of a broad collective action, Judge Tomlinson noted "[w]hen plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required

details about these observations and conversations, such as where and when they occurred and the names of the employees involved." Id. (quoting Benavides, 166 F. Supp. 3d at 481-82).

Likewise, in the instant matter, Plaintiff presents a single conclusory declaration in an attempt to conditionally certify a collective of all bussers, servers, runners, bartenders, and barbacks who were employed by Defendants at five (5) separate "Wolfgang's Steakhouse" restaurant locations within the last six (6) years while Plaintiff worked at just one restaurant as a waiter.[8] Plnf.'s Memo, p. 1; see also Plnf.'s Dec. at ¶3. Like the plaintiffs in Garriga, Plaintiff's declaration fails to provide details or dates of conversations, and names of individuals who participated in same.  A critical review of Plaintiff's declaration makes this apparent.  For example, although Plaintiff attempts to show he had conversations with other employees about Defendants' wage and hour policies, rather than itemize, detail and describe these conversations, he merely lists a handful of individuals in a chart.  The chart, merely identifies their name (when known), title, and "location." Glaringly absent from the chart are any references to or details of conversations Plaintiff had with any of the individuals listed therein. As such, Plaintiff's conclusory statements and lack of factual support fail to satisfy his burden to grant conditional certification with respect to even the location where he worked.

Further, although Plaintiff asserts the conditional collective action should cover five (5) different restaurants, his declaration refers only to individuals who allegedly worked at four (4) restaurants ("Midtown East," "Tribeca," "Park Avenue," and "Times Square").  Plaintiff simply fails to provide any allegations concerning the restaurant at 16 East 46th Street, New York, New York ("Gotham Restaurant").  Therefore, even if the Court found the non-detailed reference to one non-dated conversation, about wage and hour policies at three different restaurants (Plnf.'s

---

[8] Plaintiff never identifies how any of the titles noted performed duties similar to him.  This is an additional basis for denying the conditional certification.

Dec. ¶16) satisfied the requirements noted in <u>Garriga</u>, Plaintiff's failure to address the Gotham Restaurant should act as an unquestioned basis to deny the collective action at said location.

Overall, Plaintiff's evidence is sparse and devoid of any factual support showing that Defendants had a common policy which violated the FLSA and that Plaintiff was similarly situated to all other employees.  As such, conditional certification must be denied.

**D.   <u>Plaintiff Fails to Establish Defendants Operate as a Single Integrated Enterprise.</u>**

Plaintiff predicates his Motion on the misguided premise that <u>all</u> Defendants are liable as Plaintiff's "joint" employer under an "integrated enterprise" theory of liability (which Defendants aver is inapplicable to FLSA cases[9]). <u>See</u> Plnf.'s Memo pp. 2-5. Plaintiff's request is improper as it misconstrues the facts necessary to apply an "integrated enterprise" theory of liability.

**a.   <u>Plaintiff Cannot Satisfy The Integrated Enterprise Test</u>**

Even if Plaintiff could proceed under an "integrated enterprise" theory (and he cannot as noted in footnote 9), Plaintiff's Motion must still be rejected for not satisfying the "integrated enterprise" test.  This test <u>would</u> consider factors of "'(1) interrelated operation, (2) common management, (3) centralized control of labor relations, and (4) common ownership.'" <u>Hart v. Rick's Cabaret Int'l, Inc.</u>. 967 F. Supp. 2d 901, 940 n. 16 (S.D.N.Y. 2013). Similar to the joint employer analysis, "[c]ontrol of labor relations" is the key factor.  <u>Id.</u>; <u>see also</u> <u>Camara v. Kenner</u>, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *8 (S.D.N.Y. Mar. 29, 2018) (quoting <u>Murray v. Miner</u>, 74 F.3d 402, 404 (2d Cir. 1996)) ("No one factor is dispositive; 'control of

---

[9] "The Second Circuit Court of Appeals has yet to apply the single integrated enterprise rule to FLSA liability." <u>Camara v. Kenner</u>, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at * 8 (S.D.N.Y. Mar. 29, 2018).  While some district courts in the Second Circuit have applied the single integrated enterprise doctrine in the FLSA context, "[o]ther district courts in this Circuit have declined to apply the formal single integrated enterprise doctrine in the FLSA context and have instead used the traditional economic realities test to determine whether multiple legal entities constitute a single employer for FLSA purposes." <u>Id.</u>; <u>see, e.g.</u>, <u>Olvera v. Bareburger Grp. LLC</u>, 73 F. Supp. 3d 201, 205-06 (S.D.N.Y. 2014); <u>Gorey v. Manheim Servs. Corp.</u>, 788 F. Supp. 2d 200, 210 (S.D.N.Y. 2011).

labor relations is the central concern.'").[10]  Plaintiff fails to establish this essential factor.

Plaintiff alleged, without any factual support, six (6) corporate defendants and four (4) individual defendants should liable for actions at five (5) separate restaurants merely because of alleged common ownership and that the restaurant locations are jointly advertised. See Compl. ¶ 7; see also Plnf.'s Memo pp. 4-5.  However, the Complaint and Plaintiff's declaration attached to the Motion do not contain a single allegation as to how six (6) corporate defendants and four (4) individuals actually **controlled** the labor relations of the five (5) separate restaurants. This failure is highlighted by the admission Plaintiff worked solely at 200 East 54th Street, New York, New York.  Notably, common ownership and a common business plan or purpose are insufficient to impose liability; instead, the Defendants alleged to be a "joint" employer via an integrated enterprise must have <u>centralized control of labor relations with plaintiffs' direct corporate employer</u>.  Apolinar v. R.J. Rest., LLC, 2016 WL 2903278, *3-4 (S.D.N.Y. May 18, 2016).

The <u>only</u> factual allegation in support of Plaintiff's Motion which speaks to any control of labor relations are conclusory statements contained in Plaintiff's declaration at paragraphs 4 and 16.  Neither of these paragraphs are sufficient to establish centralized control of labor relations.  Paragraph 4 merely alleges a handful of individuals were "subject to the same wage and hour policies." See Plnf.'s Dec. at ¶4. This conclusory statement must be disregarded.

First, Plaintiff does not allege the "same wage and hour policies" are based on a directive from the alleged integrated enterprise.  This failure is critical as many restaurants in New York have similar wage and hour policies which do not make them one single entity or employer.  For

---

[10] The actual "joint" employer test endorsed by the Second Circuit considers "economic reality" based on factors of formal control – whether the defendant: (1) could hire and fire the employee; (2) supervised and controlled conditions of employment; (3) determined rate and method of pay; and (4) maintained employment records, and factors of functional control: (l) whether an employee shifted from one employer's business premises to another's; (2) the degree to which the several defendants' agents supervised the work; and (3) whether the plaintiff worked exclusively for one defendant. See <u>Barfield v. New York City Hlth. and Hosp. Corp.</u>, 537 F.3d 132, 141-143 (2d Cir. 2008).  No single factor is determinative.  <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 139 (2d. Cir. 1999).

example, two different McDonald's locations in Manhattan may have similar policies, similar hours of operation, similar disciplinary policies, rates of pay, menus, and organizational structure. These McDonald's, of course, are not joint employers simply because their wage and hour policies are similar and they are advertised jointly. Without alleging the "integrated enterprise" directed the referenced restaurants to utilize the alleged wage and hour policies, the statement is as meaningless as the McDonald's example noted above.

Second, Plaintiff again fails to explain the basis for his "personal observations" and "conversations with other employees." As such, the statement should not be afforded any weight by the Court (especially since Plaintiff never performed any work duties at the referenced restaurants).

Paragraph 16 of Plaintiff's declaration is similarly unavailing. Although Plaintiff baldly states four of his former co-workers at 200 East 54th Street, New York, New York worked at other restaurants, he does not identify the date this singular conversation regarding other restaurants with his co-worker(s) occurred, who was present, and when this alleged work was performed. Plaintiff also fails to allege knowledge of the four restaurants' general operation, payroll, managers, or policies. Paragraph 16 also fails to allege any particular Defendant required such alleged work be performed by any Tipped Employee at these other restaurants. Finally, Plaintiff does not identify how or why he came to learn of this alleged "interchangeable" nature of employment, or the extent of same. The statement, again, is conclusory, baseless and must be given no weight.

Your Honor should find that Plaintiff's declaration is insufficient to conditionally certify a Collective of all Tipped Employees at five restaurants because Plaintiff failed to show how each separate corporate entity's labor relations were controlled by one single integrated enterprise. For example, Plaintiff did not even allege that payroll was shared between the

different restaurants or that scheduling, discipline and/or pay rates of one restaurant's employees was decided by another restaurant's supervisors or owners (or the alleged integrated enterprise). Moreover, any alleged claim of common ownership (which Plaintiff himself does not make) does not alone support a finding of an integrated enterprise. See Camara, 2018 WL 1596195, at *9 (declining to find a single integrated enterprise existed where the plaintiffs "failed to explain how the stores where the plaintiffs did not work had any control or supervisions over them").

      E.     **Conditional Certification of the Instant Action Will Not Promote Judicial Efficiency**

      Even if Defendants' well-reasoned legal and factual argument did not mandate denial of Plaintiff's Motion as a matter of course, denial would still be required in light of the fact that adjudication of Plaintiff's claims require personalized, individualized inquiries as to the actual claims of each putative collective. In order for the Court to establish on the merits that Defendants failed to pay legally-owed compensation for the above-alleged claims (an assertion Defendants vehemently dispute), the Court would be required to make multiple individualized inquiries concerning each putative collective member's employment.

      As noted above, it is now clear law that "side work" duties are subject to the "tip credit." However, assuming, *arguendo*, that the side work performed is not subject to the "tip credit," the Court would need to determine the amount of time each individual collective member performed such side work duties in order to determine whether performance of same was in excess of twenty percent (20%) of the respective employee's shift.

      In analogous cases, courts have denied conditional certification due to the individualized inquiries. See Severin v. Project Ohr, Inc., No. 10 Civ. 9696 (DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012) (the court refused to conditionally certify a collective because individualized inquiries were required to determine whether a home health aide perfumed

general household work for more than 20 percent of their shift in order to be entitled to overtime pay); see also Cowell v. Utopia Home Care, Inc., No. 14 Civ. 736 (LDW)(SIL), 2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016) (same).

Additionally, with respect to Plaintiff's off-the-clock allegation, the Court first would need to determine which putative members actually performed off-the-clock work, and which did not.  After undertaking such extensive analyses for all putative plaintiffs the Court would need to undertake inquiries for each putative plaintiff to determine whether (and to what extent) such activities performed were compensable as a matter of law.  In making such individualized determination, the Court would have to conduct separate "mini trials" for each putative plaintiff.

Courts routinely hold the need to conduct such individualized inquiries defeats and frustrates the purpose of proceeding as a collective action, preventing conditional certification and requiring denial of Plaintiff's Motion as a matter of law. See Cowell, 2016 WL 4186976 at *6 (denying collective certification because the determination of whether the putative plaintiff's time was compensable required "fact-intensive analysis of factors such as what tasks [plaintiff] performed, for how long, and how it related, or did not relate" to client needs.).

## POINT II

### ANY NOTICE OF PENDENCY, AND PUTATIVE PLAINTIFF CONTACT INFORMATION REGARDING SAME, SHOULD BE LIMITED

Plaintiff is not entitled to conditional certification in any respect.  Given the tenuous right to pursue the Collective espoused by Plaintiff, it is premature to determine the proprietary of Plaintiff's proposed Notice of Pendency (the "Notice") and/or Consent to Become Party Plaintiff annexed as Exhibit A (ECF Docket No. 36-1) to Plnf.'s Memo.[11]  Notwithstanding the foregoing,

---

[11] In this regard, Defendants respectfully request and reserve the right to arrange with counsel for Plaintiff the submission of a revised Notice of Pendency and/or Consent to Become Party Plaintiff in conformity with the Court's Order(s) regarding conditional certification, should any Collective be conditionally certified.

Defendants aver Plaintiff is not entitled to: (i) a six (6) year opt-in period; (ii) putative opt-in

contact information beyond names and last known mailing addresses; (iii) direct opt-ins to mail

completed consent forms to Plaintiff's counsel; and (iv) equitable tolling.

A. **The Opt-In Notice Period Should Be Limited To Three Years Preceding the Filing Of The Complaint**

Plaintiff seeks to provide Notice to, and receive contact information for, putative

collective members employed by Defendants within <u>six</u> years prior to the filing of the

Complaint. Plnf.'s Memo p. 17.  However, Plaintiff relies on only two decisions from the Eastern

District of New York for this outlier position.  Plaintiff's counsel misrepresents the current status

amongst courts in the Second Circuit.  For instance, in another case where Plaintiff's counsel

was the counsel of record for the plaintiff, the court authorized a three-year notice period stating

that "[i]t would be confusing to employees who are ineligible for the FLSA opt-in class to

receive the opt-in notice, which does not relate to any state law claims" as the FLSA allows for a

maximum of three years statute of limitations period, and no class action had been certified for

the NYLL claims. <u>Alvarez v. Schnipper Restaurants LLC</u>, No. 16 Civ. 5779 (ER), 2017 WL

6375793, at *5 (S.D.N.Y. Dec. 12, 2017) (quoting <u>Hamadou v. Hess Corp.</u>, 915 F. Supp. 2d 651,

668 (S.D.N.Y. 2013)); <u>see also</u> <u>Sanchez v. El Rancho Sports Bar Corp.</u>, No. 13 Civ. 5119 (RA),

2014 WL 1998236, *4 (S.D.N.Y. May 13, 2014) (Abrams, J.)[12].

The NYLL's six-year statute of limitations is irrelevant and should not be considered

when providing Notice or contact information. <u>See</u> <u>El Rancho Sports Bar Corp.</u>, 2014 WL

1998236 at *4 (Abrams, J.) (noting a "more recent trend [in this Circuit] . . . is to approve three-

---

[12] "A number of courts in this Circuit have approved a six-year notice period based on the efficiency rationale cited by Plaintiffs. . . A more recent trend, however, is to approve three-year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred. . . Because . . . former employees who have only state-law claims are not eligible to join this collective action, the Court determines that a three-year notice period would be appropriate in this case." <u>Id.</u> (internal quotations and citation omitted).

year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred") (internal quotation marks and citation omitted)).   Thus, and as has recently been held by the Southern District of New York, any Notice period must be limited to the three years prior to the filing of the Complaint, rather than six.   See, e.g., Reyes, 2016 WL 796859 at *2; Paguay v. Barbasso, Inc., 2012 WL 2914288, at *3 (S.D.N.Y. July 17, 2012); Vasquez v. Vitamin Shoppe Industries Inc., No. 10 Civ. 8820 (LTS)(THK), 2011 WL 2693712 at *4 (S.D.N.Y. July 11, 2011); Jamie Urtubia v. Ba Victory Corp., 857 F. Supp. 2d 476 (S.D.N.Y. 2012).

**B.     Plaintiff's Receipt of Opt-In Contact Information Must be Limited to Only the Names and Last-known Addresses of Putative Collective Members**

Plaintiff further requests production of potential opt-ins': full names; job titles; compensation rate(s); last-known addresses; email addresses; telephone numbers; and dates of employment in connection with their Motion. Plnf.'s Memo p. 18.  However, and much like their Motion, this request is improper.  It also constitutes an impermissible invasion of privacy for non-parties, and is unnecessary to effectuate the Notice's purpose. In fact, Your Honor has previously limited putative collective members' contact information once conditional certification is granted. See Andon, 2018 WL 3970910, at *2 (Parker, J.). Specifically, in Andon, Your Honor only permitted the production of names, last known addresses and email addresses. Id.

The purpose of a Notice of Pendency is simply to inform putative collective members of the existence of the litigation and their right to opt-in to same.  See Soler v. G&U, Inc., 568 F. Supp. 313, 316 (S.D.N.Y. 1983).  Given this limited purpose as measured against a non-party's

right to privacy[13], courts within the Second Circuit routinely limit provision of non-party information for purposes of a Notice of Pendency to just "the names and addresses of potentially similarly situated employees." Iriarte v. Café 71, Inc., 2015 WL 8900875, *6 (S.D.N.Y. Dec. 10, 2015) (citation omitted) (emphasis in original); see also, e.g., Trinidad v. Pret A. Manger (USA) Ltd., 962 F. Supp. 2d 545, 564-65 (S.D.N.Y. 2013) (denying request for provision of telephone numbers as invasive and unwarranted); Michael v. Bloomberg L.P., 2015 WL 1810157, *4 (S.D.N.Y. Apr. 17, 2015) (denying request for social security numbers, dates of birth and telephone numbers); Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (denying request for telephone numbers, alternate addresses and social security numbers as plaintiff failed to show "why he requires such extensive production of information").

As such, in light of the privacy concerns of non-parties to this suit, Defendant respectfully requests the Collective List be limited to provision of names and addresses only.

## C.    Consent Forms Should Be Mailed To The Clerk Of The Court

Plaintiff acknowledges that "the Court's general position [is] that consent forms should be sent to the Clerk of the Court." Plnf.'s Memo at p. 19.  Plaintiff's counsel's reasoning for abandon this well-reasoned rule is flawed and must be rejected.  Plaintiff's counsel states that requiring consent forms be mailed to the Clerk of the Court "discourages participation and prohibits Plaintiff's counsel from conducting his investigation and contacting his own possible clients." Id.  This is simply false as Plaintiff's counsel's contact information would be listed on the Notice, and after a putative collective member submits his/her consent form to the Court, the

---

[13] See, e.g., Wright v. AARGO Sec. Servs., Inc., No. 99-CV-9115(CSH), 2000 WL 264326, *3 (S.D.N.Y. Mar. 9, 2000) (requiring disclosure of non-party records in an FLSA overtime case under protective order only); Andrews v. Cruz, No. 04-CV-0566 (PAC)(RLE), 2006 WL 1984650, *3 (S.D.N.Y. July 14, 2006) (requiring redaction of private information for non-parties); Soto v. ECC Indust., Inc., No. 05-CV-4764 (BMC), 2006 WL 2375465, *1 (S.D.N.Y. Aug. 14, 2006) (denying access to non-relevant non-party information).

respective individual's contact information would be forwarded to Plaintiff's counsel; at which point, Plaintiff's counsel can conduct his investigation and contact his "client."

Therefore, Defendants respectfully request the Court order putative collective members to return their consent forms to the Clerk of the Court. See, e.g., Hernandez v. The Fresh Diet Inc., No. 12 Civ. 4339 (ALC)(JLC), 2012 WL 5936292, at *2 (S.D.N.Y. Nov. 21, 2012) (ordering consent forms be returned to the Clerk of the Court rather than to the plaintiffs' counsel "to ensure that opt-in [p]laintiffs understand that they may choose their own counsel without being influenced by having to return the form to [p]laintiffs' counsel"); see also Robles v. Liberty Rest. Supply Corp., No. 12 Civ. 5021 (FB)(VMS), 2013 WL 6684954, at *9 (E.D.N.Y. Dec. 18, 2013) (holding that returning consent forms to the Clerk of the Court "avoids the risk of delaying a tolling of the statute of limitations [for an] opt-in plaintiff's claim as a result of the turnaround time occasioned between receipt of a consent form by [p]laintiff's counsel and the need to file the form, [making this practice] in the best interest of any opt-in plaintiff").

### D.   Equitable Tolling Is Not Warranted

Plaintiff seeks equitable tolling for all putative plaintiffs from the date of the Complaint forward. See Plnf.'s Memo at p. 20. Plaintiff's request is premature, as it seeks to litigate issues on behalf of "unknown . . . potential class members who may . . . not choose to participate in this action." Arena v. Plandome Taxi, Inc., No. 12 Civ. 1078 (DRH)(ETB), 2013 WL 1748451, *2 (E.D.N.Y. Apr. 23, 2013).  Courts do not expend judicial resources unnecessarily by litigating issues relating to a non-existent class.  See Khan v. Airport Mgmt. Servs., LLC, No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011).

Regardless, even if the Court entertained Plaintiff's premature and baseless argument, it fails on the merits.  In this regard, to be entitled to equitable tolling, Plaintiffs must establish: (1) "the circumstances are so extraordinary that [equitable tolling] should apply"; and (2) members

of the putative collective have acted with "reasonable diligence during the time period [they] seek[] to have tolled." Zerilli-Edelglass v. N.Y.C. Trans. Auth., 333 F.3d 74, 80-81 (2d Cir. 2003). "Equitable tolling is appropriate only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights." Andon, 2018 WL 3970910, at *3 (Parker, J.) (internal quotation marks and citation omitted); see also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 479 (2d Cir. 2008) (equitable tolling "is, however, a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs"). Plaintiff bears the burden to establish that equitable tolling is warranted. Wang v. Palmisano, 157 F. Supp. 3d 306, 324 (S.D.N.Y. 2016).

Here, similar to his request for conditional certification, Plaintiff fails to offer any factual support for his request for equitable tolling. Plaintiff merely states that he has "been diligent in seeking [conditional] certification and the Court should therefore grant equitable tolling from the date this motion [was] filed." Plnf.'s Memo p. 21. As such, given Plaintiff's failure to adduce "extraordinary circumstance" and/or "reasonable diligence," Your Honor should deny Plaintiff's request for equitable tolling. See Andon, 2018 WL 3970910, at *3 (Parker, J.) (holding that the case did not present any "rare" or "exceptional circumstances" and therefore, denied the plaintiff's request for equitable tolling); see also El Rancho Sports Bar Corp., 2014 WL 1998236, at *6 (Abrams, J.) (denying the plaintiffs' request for equitable tolling).

### E.    Form of the Notice

In the event the Court determines that conditional certification is warranted, Defendants respectfully request the Court order the parties to meet and confer[14] regarding the form of the

---

[14] See, e.g., Andon v. SDG Properties, Inc., No. 17 Civ. 7876 (ALC)(KHP), 2018 WL 3970910, at *2 (S.D.N.Y. Aug. 20, 2018) (Parker, J.) (directing the parties to meet and confer regarding the plaintiff's proposed notice); see also Taveras v. D&J Real Estate, 324 F.R.D. 39, 42 (S.D.N.Y. 2018) (Parker, J.) (informing the parties that the proposed notice would "need to be modified after a meet-and-confer in light of this Court's ruling" on the plaintiffs' motion for conditional certification).

Notice.  Defendants request, amongst other items, the Notice inform putative collective members of the possibility that they might be required to take part in discovery or testify at trial, and that Defendants' counsel's contact information be added to the Notice as well. See El Rancho Sports Bar Corp., 2014 WL 1998236, at *5 (Abrams, J.) (ordering the notice inform putative collective members of their requirement to participate in discovery and/or testify at trial, and that defense counsel's contact information be added to the notice).

## **CONCLUSION**

**WHEREFORE**, Defendants respectfully request: (i) Plaintiffs' Motion be denied, and in the event it is not, it should be limited to 200 East 54th Street, New York, New York 10022 and for a three year period preceding the filing of the Complaint; (ii) to the extent a Notice of Pendency and provision of relevant contact information is required, it should be limited to names and last-known addresses in connection with same; (iii) to the extent a Notice of Pendency and/or Consent to Become a Party Plaintiff is required, such Notice and Consent shall be revised in accordance with the Parties' conference and any relevant Orders of this Court regarding conditional certification; and (iv) Defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:  Mineola, New York
January 11, 2019

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**
Attorney for Defendants
190 Willis Avenue
Mineola, New York 11751
(516)747-0300
lmartinez@meltzerlippe.com

By: _____**ECF**_____ /s/
Gerald C. Waters, Jr., Esq.
Jonathan D. Farrell, Esq.
Nicholas P. Melito**,** Esq.