UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

ELVIR DELIJANIN, *individually and on behalf of*

*others similarly situated*,

Plaintiff,

-against-

WOLFGANG'S STEAKHOUSE INC, *et al.,*

Defendants.

--------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/22/2019 _____

18-CV-7854 (RA) (KHP)

OPINION & ORDER ON

CONDITIONAL CERTIFICATION

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Elvir Delijanin, individually and on behalf of all others similarly situated, brings this action against Defendants Wolfgang's Steakhouse Inc., Wolf Eastside LLC ("Midtown East"), ZMF Restaurants LLC ("Park Ave."), Wolf Gotham LLC ("Gotham"), Wolf on Broadway LLC ("Times Square"), Wolf at Tribeca Inc. ("Tribeca"), Peter Zweiner, Wolfgang Zweiner, Zizo Doe, Aramo Doe, and John Does 1-10 (collectively, "Defendants"). Plaintiff claims that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the New York Labor Law ("NYLL"), by failing to (1) pay Plaintiff and their other non-exempt tipped employees ("Tipped Employees") the statutory minimum wage under the FLSA and NYLL due to invalid tip credit deduction, (2) pay Plaintiff and Tipped Employees for all regular and overtime hours worked due to "off-the-clock" work, (3) pay Plaintiff and Tipped Employees the proper overtime

premium rate; and (4) satisfy other requirements of the New York Labor Law. (Doc. No. 1 ("Complaint").)

Plaintiff has moved for conditional certification of his FLSA claims as a collective action and leave to disseminate notice to the putative FLSA collective, pursuant to 29 U.S.C. § 216(b). (Doc. No. 35.)  Plaintiff asks for notice to be sent to all individuals who worked as Tipped Employees for all the Defendant entities at five different locations for the six-year period preceding the filing of the Complaint in this action.  Plaintiff also moves for equitable tolling of the FLSA claims in conjunction with his motion for conditional certification.  *Id.*

Defendants oppose Plaintiff's motion for conditional certification on several grounds including:  (1) Defendants paid Plaintiff more than the applicable federal minimum wage and overtime rates, (2) Plaintiff has not made even the modest factual showing sufficient to demonstrate that he and the other Tipped Employees were victims of a common policy or plan that violated the FLSA, (3) Plaintiff has failed to demonstrate that the various corporate entities named as Defendants operated as a single integrated enterprise, and (4) conditional certification will not promote judicial efficiency.  Defendants argue that if the Court grants Plaintiff's motion, the notice should be sent to only to individuals who worked as Tipped Employees at the Midtown East location where Plaintiff worked for the three-year period preceding the filing of the Complaint in this action.  For the reasons discussed below, Plaintiff's motion is granted in part and denied in part.

Plaintiff worked as a waiter at the Wolfgang's Steakhouse restaurant located at 200 East 54th Street in New York City from January 2013 through April 2018 (the "Midtown East location"). Since Plaintiff filed this suit, one of Plaintiff's former co-workers, Omer Boci, has joined this action. (Doc. No. 46.) Boci worked as a waiter at the Midtown East location from in or about May 2010 to January 2017. (Doc. No. 49-1 ("Boci Decl.").)

In support of his motion for conditional certification, Plaintiff submitted a sworn declaration addressing the factual basis for his claims and attaching copies of his paystubs. (Doc. No. 37 ("Delijanin Decl.").) In his reply in support of the motion, Plaintiff submitted a sworn declaration from Boci containing nearly identical language and assertions as those in Plaintiff's declaration. *Compare* Delijanin Decl. *with* Boci Decl. Plaintiff did not provide any of Boci's paystubs. Both declarations are sparse in detail.

According to their declarations, Plaintiff and Boci were each scheduled to work thirty-eight hours per week. Boci Decl. ¶ 5; Delijanin Decl. ¶ 5. Both state that they were required to come to work 30 minutes to one hour before the start of their shifts to perform side work such as setting up and cleaning. Boci Decl. ¶ 6; Delijanin Decl. ¶ 6. Both state that their "off-the-clock" hours were never reflected on their paystubs. *Id.* Plaintiff states that he actually worked 42 hours per week. Boci states that he actually worked between 2 and 6 hours "off-the-clock" every week, meaning that he worked between 40 and 44 hours a week. Boci Decl. ¶ 6; Delijanin Decl. ¶ 7. Both state that when they were occasionally scheduled to work more than

40 hours, they still had to work "off-the-clock" and that their paystubs in those weeks did not reflect that extra work time.  Boci Decl. ¶ 8; Delijanin Decl. ¶ 8.

As for the pay they received, Plaintiff and Boci state that they received a minimum cash wage of $5 per hour from 2012 through 2016.  Boci left Defendant's employ at the end of 2016, while Plaintiff continued working into 2018.  Boci Decl. ¶ 1; Delijanin Decl. ¶ 1.  Plaintiff states that he received a minimum cash wage of $7.50 per hour in 2017 and $8.65 per hour in 2018.  Boci Decl. ¶ 11; Delijanin Decl. ¶ 11.   They do not state the overtime rates they received.  However, Plaintiff's 2017 paystubs reflect an alternative or double shift rate of $11.00, and an overtime rate of $12, and his 2018 paystubs reflect an alternative or double shift rate of $13.00.  It thus appears that both Plaintiff and Boci were paid a straight time cash wage in accordance with New York's rules for tipped workers for their recorded hours of work and thus, necessarily were paid a straight time cash wage in accordance with federal law for tipped workers.[1]  In fact, based on this Court's calculations, it appears Plaintiff and Boci received more than the federal minimum straight time cash wage for tipped workers for all their straight time hours, including their alleged off-the-clock hours.  Thus, one core fact issue is the notice provided by Defendant about tips and tip credit.

---

[1] New York has required a higher minimum wage than federal law for some time.  *Compare* N.Y. Comp. Codes R. & Regs. tit. 12 § 146 (2016) *with* 29 U.S.C. § 206.  It also has different tip allowance rules that reflect its more generous minimum pay requirement. New York law provided that food service workers had to be paid a minimum hourly cash wage of $5.00 per hour with a tip credit of $2.25 per hour in 2013, a minimum hourly cash wage of $5.00 per hour and a tip credit of $2.50 per hour in 2014, a minimum hourly cash wage of $5.00 per hour and a tip credit of $3.75 for 2015, and a minimum hourly cash wage of $7.50 per hour and a tip credit of $1.50 for 2016, a minimum hourly case wage of $7.50 per hour and tip credit of $3.50 per hour for 2017, a minimum hourly case wage of $8.65 per hour and tip credit of $4.35 per hour for 2018.  N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3 (2013), *amended by* N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3 (2016).

The twenty-three paystubs submitted by Plaintiff to this Court were issued by Defendant Midtown East, indicating that Plaintiff was employed by that entity. (*See*, *e.g.*, Doc. No. 36-9.) The paystubs cover fifteen weekly pay periods in 2017 and eight pay periods in 2018. All of the paystubs Plaintiff submitted to the Court contain break downs of regular hours, double shift or alternate hours, and/or overtime hours as well as charged and cash tips. In most pay periods, Plaintiff is recorded as having worked far less than 40 hours, suggesting he was not regularly scheduled to work 38 hours per pay period as he stated in his declaration, and that 2 (or more) hours of "off-the-clock" time would not be compensable at an overtime rate for most weeks.[2] (Doc. No. 36-9; Doc. No. 49-2; Doc No. 49-3.) The following are examples of some of the paystubs provided by Plaintiff:

- 3/27/17 to 4/2/17: 32.16 work hours; total gross pay of $1,295.20 which is comprised of 30.16 hours at the hourly rate of $7.50, 2 hours at the hourly rate of $11.00, and $1,047 in charged tips and $43 in cash tips.
- 7/17/17 to 7/23/17: 33.54 work hours; total gross pay of $1313.55 which is comprised of 31.54 hours at the hourly rate of $7.50, 2 hours at the hourly rate of $11.00, and $1,055 in charged tips and $76 in cash tips.
- 7/24/17 to 7/30/17: 31.52 work hours; total gross pay of $1,458.40 which is comprised of 31.52 hours at the hourly rate of $7.50, 2 hours at the hourly rate of $11.00 (for a double shift), and $1,200 in charged tips and $43 in cash tips.
- 7/31/17 to 8/6/17: 31.93 work hours; total gross pay of $1,167.48 which is comprised of 29.93 hours at the hourly rate of $7.50, 2 hours at the hourly rate of $11.00 (for a double shift), and $921 in charged tips and $65 in cash tips.
- 8/21/17 to 8/27/17: 39.12 work hours; total gross pay of $1,148.90 which is comprised of 36.12 hours at the hourly rate of $7.50, 3 hours at the hourly rate of $11.00 (for a double shift), and $845 in charged tips and $51 in cash tips.

---

[2] There are three pay periods (out of 23) for which evidence was submitted to this Court in which Plaintiff worked overtime. They are:

- 12/11/17 to 12/17/17 (reflecting 47.72 work hours);
- 12/18/17 to 12/24/17 (reflecting 48.43 work hours); and
- 2/5/18 to 2/11/18 reflecting (41.09 work hours).

- 12/11/17 to 12/17/17: 47.72 work hours; total gross pay of $2,611.64 which is comprised of 40 hours at the hourly rate of $7.50, 5.72 hours of overtime at the rate of $12, 2 hours at the rate of $11.00 (for a double shift), and $2,221 in charged tips and $148 in cash tips.
- 12/18/17 to 12/24/17: 48.43 work hours; total gross pay of $2,766.16 which is comprised of 40 hours at the hourly rate of $7.50, 5.43 hours of overtime at the rate of $12, 3 hours at the rate of $11.00 (for a double shift), and $2,366 in charged tips and $148 in cash tips.
- 2/5/18 to 2/11/18: 41.09 work hours; total gross pay of $1,212.48 which is comprised of 38 hours at the hourly rate of $8.65, 3 hours at the rate of $13.00 (for a double shift), and $844 in charged tips and $82 in cash tips.

Each of Plaintiff's paystubs contains a box labeled "Important Message(s)" in bold typeface. Text in the box on the 2017 paystubs states that, under New York law, a tip credit of up to $3.50 may be taken toward an $11 minimum wage. (*See*, *e.g.*, Doc. No. 36-9.) The same area on the 2018 paystubs states that, under New York law, a tip credit of up to $4.35 may be taken toward an $13 minimum wage. This advisory message partially contradicts Plaintiff's contention that he did not receive notice about tips and tip credits taken against his earnings. Delijanin Decl. ¶ 12.

In connection with its opposition to conditional certification, Defendant provided a document entitled "Employee Earnings Record" for the period 1/1/2012 through 12/31/2018 for the Plaintiff. (Doc. No. 42-2.) Notwithstanding its title, the document appears to reflect pay on only certain dates in 2016 and 2017. However, consistent with the paystubs submitted by Plaintiff, it reflects a regular hourly pay rate of $7.50 per hour in 2016 and, for those few weeks when overtime was worked, an overtime rate of $12. Defendant also submitted a document entitled "Tip Allowance Acknowledgment Form" dated March 8, 2010 that was allegedly signed by Boci. (Doc. No. 57-1.) The form notes that the minimum wage at that time was $7.25 and

that Boci would receive an hourly cash wage of *at least* $4.65, and that a tip credit of $2.55 per hour would be taken. The document states that the tip allowance and wage rates could change in the future based on changes to applicable law. Thus, it appears that Boci may have received notice about tip credits. Boci Decl. ¶ 12.

With regard to their work duties, both Plaintiff and Boci state in their Declarations that they performed work unrelated to being a waiter, including setting up the dining area, cutting lemons and limes, carrying water and soda from the basement, polishing silverware and glasses, preparing whip cream and butter, folding napkins, making deliveries, and preparing sauces. Boci Decl. at ¶ 13; Delijanin Decl. ¶ 13. They contend that they spent 20% of their time performing such "non-tipped" work and therefore that they were not appropriately treated as tipped employees. Boci Decl. ¶ 13; Delijanin Decl. ¶ 13.

Plaintiff provided no information on the cash wages paid to other Tipped Employees, other employees' weekly schedules, or other employees' tips for the years 2015 through the present. He provides only hearsay information about uncompensated "off-the-clock" work allegedly performed at other locations.

Plaintiff asserts that the various Wolfgang's Steakhouse locations are part of a single integrated enterprise. To support that view, Plaintiff submitted screen captures of marketing-related websites that advertise for the various Wolfgang's Steakhouse locations (including shots from the Wolfgang's Steakhouse website and social media) (Doc Nos. 36-2, 36-4, 36-6, 36-7.), a menu (Doc. No. 36-3.), various images of the restaurants (Doc. No. 36-5.), and an article about the restaurant from the Miami Herald (Doc. No. 36-8.). *See* Compl. at 5.

Lastly, on the day this Court was going to file its decision on Plaintiff's motion and two months after briefing was complete, Plaintiff filed a letter attaching a supplemental declaration from Hodo Alibegovic. This submission was improper and therefore was not considered by the Court in rendering this decision.[3] See *Ruggiero v. Warner-Lambert Co.,* 424 F.3d 249, 252 (2d Cir. 2005); *Pall Corp. v. Cuno Inc.*, 03-cv-0092, 2007 WL 2363019, at *1 n.1 (E.D.N.Y. Aug. 14, 2007).

**DISCUSSION**

**I. Collective Action Certification Legal Standard**

Section 216(b) of the FLSA provides that parties suing under Sections 206 and 207 may proceed "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A proceeding brought under Section 216 is traditionally referred to as a "collective action." *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012). Although the statute itself does not prescribe the process for collective action approval, "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Orders authorizing notice to potential collective action members are often referred to as orders conditionally "certifying" a collective action, even though the FLSA itself does not mandate certification. *See*, *e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10. (2d Cir. 2010); *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010). The dissemination of notice in

---

[3] Plaintiff submitted Boci's declaration with his reply brief, necessitating a sur-reply. Although the Court was not required to consider Boci's declaration, it elected to consider it and provide Defendant a chance to respond. In other words, the Court has already given Plaintiff leniency in considering this motion.

an FLSA collective action is in fact a case management tool that courts may employ in "appropriate cases," including where notice will facilitate swift and economic justice.  *See Myers*, 624 F.3d at 555 n.10.

The Second Circuit has endorsed a two-stage process for certification of a collective action under Section 216(b) of the FLSA.  *Myers*, 624 F.3d at 554-55.  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Id.* at 555.  Plaintiffs can meet this burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Guillen*, 750 F. Supp. 2d at 475 (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  The modest factual showing can be made by "relying on [plaintiff's] own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."  *Hallissey v. Am. Online, Inc.*, No. 99-cv-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) (citing *Anglada v. Linens 'N Things, Inc.*, 2007 WL 1552511 at *4 (S.D.N.Y. April 26, 2007)).  If the Court finds that the potential plaintiffs appear to be similarly situated, it will issue notice and permit the case to proceed through discovery as a collective action.  *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).  However, conditional certification is not mandatory and lies within the discretion of the court.  *See, e.g.*, *Schucker v. Flowers Foods*, Inc., No. 16-CV-3439 (KMK), 2017 WL 3668847, at *5 (S.D.N.Y. Aug. 24, 2017) ("[C]onditional certification is discretionary and managerial in nature.") (citation and internal quotation marks omitted); *Auffray v. FXFL, LLC*, No. 1:15-CV-9379-GHW, 2016 WL 6810863, at *2 (S.D.N.Y. Nov. 16, 2016) ("[T]he decision

whether to a grant a motion for conditional certification of an FLSA collective action lies within the discretion of the district court. . . . [C]conditional certification . . . is not mandatory, even where named plaintiffs are able to show that they are similarly situated to potential opt-in plaintiffs.").

Because certification at this early juncture is merely "preliminary" and subject to reevaluation on a fuller record, a plaintiff's burden is low. *See*, *e.g.*, *Lynch*, 491 F. Supp. 2d at 368 ("The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage.").  At this initial stage, the court does not evaluate the underlying merits of a plaintiff's claims.  It merely determines whether the plaintiff has made the minimal showing necessary for court-authorized notice. *Damassia v. Duane Reade, Inc.*, No. 04-cv-8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (collecting cases).

In keeping with the minimal showing standard, FLSA collective actions have been conditionally certified upon a single plaintiff's affidavit. *See*, *e.g.*, *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv- 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015); *Gonzalez v. Scalinatella, Inc.*, No. 13-cv-3629 (PKC), 2013 WL 6171311, at *3 (S.D.N.Y. Nov. 25, 2013); *Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794 (RWS), 2013 WL 3199292, at *3-4 (S.D.N.Y. June 25, 2013) (granting conditional certification and collecting cases).  However, certification is not automatic. *See*, *e.g.*, *Guillen*, 750 F. Supp. 2d at 476-80 (denying certification at the first stage); *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 349-57 (E.D.N.Y. 2015) (affirming the denial of conditional certification).  A plaintiff cannot meet his or her burden by unsupported assertions or conclusory allegations. *See*, *e.g.*, *Myers*, 624 F.3d at 555; *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006).

At the second stage, the district court conducts a more stringent analysis, based on the record developed through discovery, to determine whether the collective action should proceed. *Myers*, 624 F.3d at 555. The action may be "de-certified" if the record reveals that the plaintiffs who have opted in are not actually "similarly situated" to the named plaintiff, and the opt-in plaintiffs' claims may be dismissed without prejudice. *Id*. This second stage inquiry is more stringent because the court "is able to examine whether the *actual* plaintiffs brought into the case are similarly situated." *Gortat v. Capala Bros., Inc.*, No. 07-cv-3629 (ILG), 2010 WL 1423018, at *10 (E.D.N.Y. Apr. 9, 2010) (emphasis in original); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).

## II.     Application of Conditional Certification Standard to this Case

Having carefully reviewed the information submitted by Plaintiff, this Court finds that Plaintiff has met the minimal burden necessary for conditional certification of his FLSA claims as to the Midtown East location. Plaintiff has not met the burden necessary to extend certification to all Wolfgang locations. In making these determinations, the Court considers evidence of an alleged common policy that violated the FLSA during the 3-year limitations period applicable to willful violations.[4]

### A.  Midtown East Location

The Court notes that there are aspects of Plaintiff's submissions that suggest Plaintiff and Boci may not be similarly situated with regard to all of the alleged FLSA violations for all years within the statute of limitations period. For example, Boci appears to have received

---

[4] Plaintiff has asserted claims for willful violations of the FLSA, where a 3-year statute of limitation applies. 29 U.S.C. § 255. The Complaint in this action was filed on August 28, 2018, so the three-year period extends back to August 28, 2015.

notice about tips and tip credit via the Tip Allowance Acknowledgment Form, whereas the only evidence that Plaintiff received such notice is his paystubs from 2017 and 2018 (after Boci left Midtown East's employ). Thus, it is possible that Boci, but not Plaintiff, may have properly been treated as a tipped worker in 2015 and 2016, and that Plaintiff may have been properly treated as a tipped worker in 2017 and 2018. It is likewise possible that Plaintiff and Boci may not be similarly situated in terms of their rates of pay. Pay records for Plaintiff suggest he may have received the proper straight time cash wage in 2016, 2017 and 2018 regardless of whether he was properly treated as a tipped employee under the FLSA insofar as they suggest he received a minimum cash wage of $7.50 per hour for straight time work—in excess of the federal minimum wage of $7.25 per hour. In contrast, Boci states he received a straight time cash wage of $5.00 per hour in 2016, which was less than the federal minimum wage for non-tipped employees but more than the federal minimum cash wage for tipped employees. In other words, for the calendar year 2016, Boci may have received an insufficient straight time rate if it turns out he was not properly treated as a tipped employee under federal law, whereas that may not be true for Plaintiff. Additionally, the information submitted to this Court for 2016, 2017, and 2018 indicates that Plaintiff's total weekly compensation exceeded the overtime requirements of the FLSA for tipped workers, suggesting he might not have a claim for overtime under federal law. Plaintiff has failed to provide any information about the amount of tips received by Boci or others, so the Court has no basis to know whether they are similarly situated in this regard.

These differences, if they are in fact differences, will be evaluated more closely at a later stage of the case. Plaintiff will need to prove that he was the victim of a policy that violated the

FLSA for the case to move forward as a collective action and, indeed, to prove his individual claims. *See Garcia v. Chipotle Mexican Grill, Inc.,* No. 16 CIV. 601 (ER), 2016 WL 6561302, at *4 (S.D.N.Y. Nov. 4, 2016) (quoting *Hanming Feng v. Soy Sauce LLC*, No. 15 Civ. 3058 (ENV) (LB), 2016 WL 1070813, at *3 (E.D.N.Y. Mar. 14, 2016); *see also Trinidad v. Pret A Manger (USA) Ltd.,* 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013) ("The court's discretionary power to facilitate the sending of notice to potential class members is premised on its use as a tool for efficient case management, . . . it does not promote efficient case management to facilitate notice . . . where the representative plaintiffs have failed to state plausible FLSA violations.").

But the burden at the first stage of certification is low. The Court does not weigh the merits of the underlying claims at this stage. *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 665 (S.D.N.Y. 2013); *Hernandez v. City of New York*, No. 16-CV-3445 (RA), 2017 WL 2829816, at *4 (S.D.N.Y. June 29, 2017); *Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016). As such, the sworn declarations from Plaintiff and Boci that they and their co-workers at the Midtown East location were not provided appropriate tip notice and were not compensated for off-the-clock work, which may implicate computation of their regular rate and overtime rate, are sufficient to suggest that Plaintiffs were subject to the same allegedly unlawful policy. *Hernandez v. City of New York*, 2017 WL 2829816, at *5. In reaching this conclusion, the Court credits Plaintiff's statement that he "frequently talked" to his co-workers at Midtown East "about Defendant's pay policies before work while working off-the-clock, during breaks, and also after work." Delijanin Decl. ¶ 14. It notes that Plaintiff listed the names of 18 waiters, bartenders, and barbacks who worked at his location with whom he spoke about wages. Delijanin Decl. ¶ 4. According to Plaintiff, "[e]verybody complained about how unfair it

was that Defendants were not paying us properly for all hours we worked. We complained that these couple hours each week [of off-the-clock work] would really start adding up over time but we would never be paid for those hours." Plaintiff further notes that "[e]veryone also frequently complained about the non-tipped side work[5] that Defendants made us perform." *Id.*; *see also* Delijanin Decl. ¶¶ 14-15. Boci states essentially the same thing as Plaintiff Deljanian, but he identifies eight waiters and a bartender at his location. Boci Decl. ¶¶ 4, 14-15. Notice to other Tipped Workers at this location will flesh out whether there are in fact other aggrieved workers (as Plaintiff and Boci attest) and provide more information to assess the merits of this action proceeding as a collective. *See Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 353 (E.D.N.Y. 2008).

### B. Other Locations

In contrast, Plaintiffs' proffer regarding the policies at the other Wolfgang's Steakhouse locations is insufficient to warrant sending notice to employees of those other locations. Plaintiff's proffer consists only of: (1) conclusory assertions that "[e]mployees were interchangeable between various Wolfgang's Steakhouse locations," and (2) hearsay conversations with co-workers about their experiences at other Wolfgang's restaurants at unspecified dates. Delijanin Decl. ¶ 16; Boci Decl. ¶ 16. Neither Plaintiff nor Boci claim to have worked at any other locations such that they personally experienced or observed wage violations at any other location. *See generally* Delijanin Decl.; Boci Decl. ¶ 16. Thus, they have no personal knowledge of working conditions at other locations.

---

[5] The Court does not reach the arguments concerning whether Plaintiff, Boci, and others were properly treated as tipped employees insofar as they all allegedly spent 20% of their workweeks performing non-tipped work because these arguments involve factual and legal issues that are inappropriate to resolve at this stage of the litigation.

According to Plaintiff, four of his Midtown East co-workers worked at three other Wolfgang locations. Delijanin Decl.¶ 16. Plaintiff declares that "[o]n one occasion, I spoke with them about their experiences at the other Wolfgang's Steakhouses – I asked if they also had to work off-the-clock and perform side-works [sic] at the other Wolfgang's Steakhouse locations, and they told me that the situation was the same at all locations." *Id.* Plaintiff goes on to state that "[t]hey told me that the tipped employees at the [other locations] also complained about the off-the-clock work and also had to perform the same side works that we had to do at the Midtown East location for over two hours each day." *Id.* Notably, Plaintiff does not provide detail about "where or when these observations or conversations [about the other locations] occurred," which is "critical . . . for the Court to determine the appropriate scope of the proposed class." *Sanchez v. JMP Ventures, L.L.C.*, No. 13-cv-7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014). Similarly, in his declaration, Boci provides names of employees at other locations including a waiter who worked at the Park Avenue location, a Bartender who worked at his location and the Gotham location, a waiter who worked at Park Avenue and Gotham locations, a waiter who worked at the Tribeca location, and a waiter who worked at the Times Square location. Boci Decl. ¶ 4. However, these individuals did not work at the Midtown East location, and Boci did not work anywhere other than at the Midtown East location, making it unclear how Boci knows these individuals or when he spoke with them about their work experiences. Boci also states he spoke with a Midtown East bartender named Alim about his experience working at other Wolfgang's Steakhouse locations and that Alim "told me that the situation was the same at all locations, that his manager required him to work off the clock." Boci Decl. ¶ 16. However, Boci also states that Alim worked at only one other location—the

Gotham location.  *Compare* Boci Decl. ¶ 4 *with* Boci Decl. ¶ 16.  It is unclear how Alim knew about wage and hour practices at all other Wolfgang's Steakhouse locations.

Plaintiff and Boci's conclusory hearsay statements are insufficient to provide a factual nexus between Midtown East and other locations.  All they have provided is a list of "unsupported assertions and conclusory allegations" that are "insufficient to conditionally certify a class" that includes other locations.  *See Sanchez*, 2014 WL 465542, at *2 (finding that information about "where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process"); *Laroque,* 557 F. Supp. 2d at 356 (certifying employees at a pizzeria where plaintiffs worked, but declining to extend certification where the evidence consisted of "generalized allegations of wrongdoing" and "hearsay statements"); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *5 (S.D.N.Y. Nov. 13, 2009) (denying conditional and class certification in an "off-the-clock" case where the plaintiff "attempt[ed] to impute her own limited experience" to the class and the plaintiff's evidence failed to justify the size and scope of the proposed class).

To the extent Plaintiff asserts that the Defendant entities are a single integrated enterprise, there is insufficient proof at this point for the Court to make such a determination. "[W]hether or not [d]efendants operated as a single enterprise is a complicated and fact-specific inquiry that is not properly determined at the class certification stage."  *Taveras v. D & J Real Estate Mgmt. II, LLC,* 324 F.R.D. 39, 41 (S.D.N.Y. 2018) (quoting *Tiro v. Pub. House Investments*, LLC, 288 F.R.D. 272, 279 (S.D.N.Y. 2012)).  When evaluating whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes,

courts consider the interrelation of operations, including whether there is centralized control of labor relations, common management, and common ownership or financial control. *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (citing *Perez v. Westchester Foreign Autos, Inc.*, No. 11–cv–6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013).

Here, the other Wolfgang locations all appear to be separate corporate entities. Plaintiff has not identified a common manager at all locations who informed him and others to work off-the-clock, and the declarations of Plaintiff and Boci indicate that that there were different managers at each location. Further, courts in this District have found the images from advertising-oriented websites and marketing-oriented articles like those proffered by Plaintiff to be insufficient evidence of common control or integration of operations. *See Fernandez v. Sharp Mgmt. Corp.*, No. 16-CV-0551 (JGK)(SN), 2016 WL 5940918, at *3 (S.D.N.Y. Oct. 13, 2016) (comparing a "marketing-oriented website" to a statement from human resources or an employment manual in denying the expansion of conditional certification beyond a specific job category); *Sanchez v. Salsa Con Fuego, Inc.*, No. 16CV473RJSBCM, 2016 WL 4533574, at *4 (S.D.N.Y. Aug. 24, 2016) ("Even when locations or businesses share common ownership, plaintiffs must allege sufficient facts to support an inference of a common policy across all locations or businesses").[6]

Though Plaintiff's burden is modest, this Court cannot justify conditionally certifying a class of plaintiffs across all of the Defendant's locations given the sparse evidence of common control of workers and common policies that violate the FLSA. *See Laroque*, 557 F. Supp. 2d at

---

[6] The Court notes that the Alibegovic declaration purports to address some but not all the deficiencies identified by the Court herein. However, the Court is not considering the Alibegovic declaration in connection with this decision.

355-56 (refusing to extend certification to workers at five other pizzeria locations based on "thin" hearsay and a single claim from affiant); *Fernandez*, 2016 WL 5940918, at *5 (denying certification where plaintiffs failed to allege factual support to substantiate their claim that superintendents in other geographical locations were subject to the same unlawful compensation practices); *Ikikhueme v. CulinArt, Inc.*, No. 13-cv-293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (declining to consider plaintiff's "unsupported assertions" regarding other employees); *Hamadou*, 915 F. Supp. 2d at 665 (statements in a declaration are deemed "conclusory where they fail to identify particular employees or make specific allegations.") (internal quotation marks omitted).

### III.  Notice and Consent Form

The parties are directed to meet and confer regarding Plaintiff's proposed class notice. The parties shall submit a form of proposed notice and opt-in consent form for the Court's consideration by **April 30, 2019**.  If the parties cannot agree on aspects of the proposed notice, they shall set forth their respective positions in a letter and a proposed notice containing clearly labeled and bracketed language preferred by each party for the Court's consideration.

Plaintiff has requested that consent forms be returned to the Plaintiff rather than to the Clerk of Court.  Compl. at 19-20.  "[C]ourts in this District have split on the issue, with some requiring consents" be mailed to the Clerk of Court and some requiring consents be mailed to plaintiffs' counsel*.  See*, *e.g.*, *Benavides v. Serenity Spa NY Inc.,* 166 F. Supp. 3d 474, 486 (S.D.N.Y. 2016) (citing *Martin v. Sprint/united Mgmt. Co.*, No. 15 CIV. 5237 (PAE), 2016 WL 30334, at *18 (S.D.N.Y. Jan. 4, 2016); *Hernandez v. Fresh Diet Inc.*, No. 12 CIV. 4339 ALC JLC, 2012 WL 5936292, at *2 (S.D.N.Y. Nov. 21, 2012).  "The majority of courts, however, have

directed opt-in plaintiffs to mail the consent forms to plaintiff's counsel." *Martin*, 2016 WL 30334, at *18 (S.D.N.Y. Jan. 4, 2016) (collecting cases). As long as notice makes explicit that opt-in plaintiff may retain their own counsel, the Court approves Plaintiff's request that potential plaintiffs return consent forms directly to Plaintiff's counsel in order to promote judicial efficiency. *Id.*; *Leonardo v. ASC, Inc.*, No. 18-CV-3657 (VEC), 2018 WL 5981996, at *4 (S.D.N.Y. Nov. 14, 2018) (finding consent forms returnable to Clerk of Court "inefficient"); *Benavides*, 166 F. Supp. 3d at 486.

## IV.    Tolling of Statute of Limitations

Plaintiff seeks equitable tolling of the statute of limitations for members of the collective who have not yet opted into the collective. Equitable tolling is appropriate "only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Vasto v. Credico (USA) LLC*, No. 15-cv-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (citations and internal quotation marks omitted). This Court does not find that this case presents any such rare and exceptional circumstances. Accordingly, Plaintiff's request for equitable tolling is denied.

However, this Court recognizes that equitable tolling issues may arise as to individual opt-in plaintiffs, and that other courts in this district sometimes entertain challenges to the timeliness of individual plaintiffs' actions. *See Hamadou*, 915 F. Supp. 2d at 668. Should equitable tolling issues arise in this case as to particular plaintiffs, the Court will timely address those issues as necessary.

## V.  Time Period of Conditional Collective Action Certification

The statute of limitations applicable to a claim for unpaid wages and/or overtime compensation under the FLSA is two years from the date that the claim accrued or three years for a cause of action arising out of a willful violation.  29 U.S.C. § 255(a); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999).  At the conditional certification stage, allegations of willful FLSA violations are sufficient to apply the three-year statute of limitations for purposes of sending a notice to putative members of the collective.  *Francis v. A & E Stores, Inc.*, No. 06-cv-1638 (CLB) (GAY), 2008 WL 2588851, at *3 (S.D.N.Y. June 26, 2008), *adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008).

The Court recognizes that some courts within the Second Circuit have approved a six-year notice period when there are claims asserted under both the FLSA and NYLL in light of the six-year statute of limitations under state law.  *See* N.Y. LAB. L. § 198(3); *Trinidad* 962 F. Supp. 2d at 563 (collecting cases). The rationale asserted by these courts is that it may be more economic to avoid sending multiple notices to potential class and collective members, particularly if Rule 23 certification seems likely. *See id.*  This rationale does not apply in this case.

Because Plaintiff has alleged willful conduct by Defendants (Compl. at 6-11) and Defendants do not take issue with a three-year period (*See* Doc. No. 43, Def. Reply at 19), a three-year period will be used for sending notice to the putative collective action members. *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (VEC), 2018 WL 279756, at *6 (S.D.N.Y. Jan. 2, 2018); *see Garcia v. Chipotle Mexican Grill*, 2016 WL 6561302, at *9 (finding a three-year notice period appropriate at this stage "[g]iven the fact that willfulness is disputed").

20

Defendants' counsel shall provide Plaintiff's counsel with a list of all Tipped Employees employed by Defendants at the Midtown East location in the three-year period preceding the filing of the Complaint. Defense counsel shall provide names, last known mailing addresses, and email addresses for the putative collective members; notice shall not be posted at Defendants' restaurants. *See, e.g.*, *Michael v. Bloomberg L.P.*, No. 14-cv-2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) (ordering production of email addresses and noting that "privacy concerns have precluded courts from ordering the disclosure of certain information, including . . . social security numbers. . . . [A]bsent a showing that significant notices were returned as undeliverable, courts have refused to require posting of a collective action notice in the workplace").

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for conditional certification of the FLSA claims is **GRANTED** in part and **DENIED** in part. The Court conditionally certifies a class of potential plaintiffs who were employed by Midtown East and who were employed as Tipped Employees at any time between August 28, 2015 and the present. Conditional certification as to the other Wolfgang's Steakhouse location is denied without prejudice. To the extent Plaintiff wishes to move again for conditional certification, he must first discuss the proposed motion and timing thereof with this Court.

**SO ORDERED**

April 22, 2019
New York, New York

_____
Katharine H. Parker
U.S. Magistrate Judge