# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ELVIR DELIJANIN, *on behalf of himself, FLSA Collective Plaintiffs and the Class*,

                          Plaintiff,

    v.

WOLFGANG'S STEAKHOUSE INC.,
WOLF EASTSIDE LLC
  d/b/a WOLFGANG'S STEAKHOUSE,
ZMF RESTAURANTS LLC
  d/b/a WOLFGANG'S STEAKHOUSE AT
PARK AVENUE,
WOLF GOTHAM LLC
  d/b/a WOLFGANG'S STEAKHOUSE --
GOTHAM HOTEL,
WOLF ON BROADWAY LLC
  d/b/a WOLFGANG'S STEAKHOUSE,
WOLF AT TRIBECA INC.
  d/b/a WOLFGANG'S STEAKHOUSE
TRIBECA,
PETER ZWEINER.
WOLFGANG ZWEINER,
ZIZO DOE (last name unknown),
ARAMO DOE (last name unknown), and
JOHN DOES 1-10,

                          Defendants.

Case No.: 18-CV-07854

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL OF THE FLSA SETTLEMENT

### LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................1

   I. Procedural History ......................................................................................1

   II. Overview of Investigation and Discovery ................................................2

   III. Settlement Negotiations, Further Discovery & Preliminary Approval .................5

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ..................6

ARGUMENT.......................................................................................................7

   I. The Settlement Class Meets the Legal Standard for Class Certification ..................7

      A. Numerosity....................................................................................8

      B. Commonality..................................................................................9

      C. Typicality .....................................................................................10

      D. Adequacy of the Named Plaintiff ...................................................11

      E. Certification Is Proper Under Rule 23(b)(3) ....................................12

         1. Common Questions Predominate ................................................12

         2. A Class Action Is a Superior Mechanism ....................................13

   II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects ....................................................................14

      A. The Proposed Settlement Is Substantively Fair ...............................15

         1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ....................................................................15

         2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ............16

         3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3) ....................................................17

4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ........................................................................................................18

5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ........................................................................19

6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) ........................................................................................................19

7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................20

B. The Proposed Settlement is Procedurally Fair .................................................22

1. The Settlement Was the Result of Arm's Length Negotiations.................22

2. The Distribution of Class Notice Satisfied Due Process ...........................23

III. Approval of the FLSA Settlement Is Appropriate Under Federal Law ...............24

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                                                Page(s)

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..............................................11, 13

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) .......24

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................15, 16, 17, 18, 20

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640
N.Y.S.2d 845, 847 (1996)....................................................................................................23

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969)............................................................22

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ........................................20

*Campos v. Goode,*
No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) ......................................10

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)...............................................................................................13

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009
WL 6615729 (S.D.N.Y. November 27, 2009) ..................................................................12

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) .............................8

*In re Cendant Corp. Litig.*, 264 F .3d 243, 263 ...................................................... passim

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)................................13, 14, 15, 21

*deMunecas v. Bold Food, LLC*,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..............11, 17, 21, 22, 24

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006)..............................................7

*Diaz v. E. Locating Serv., Inc.*,
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ......11, 13, 17, 21, 23, 24

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011).........9, 10

iii

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)....................................10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................21

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................8, 9, 10, 12, 13, 17, 18, 20

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .........................................................8

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ......................................20

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)....................................14

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) .............................................12, 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...............................................13

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).................................................23

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) ...............................................17

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008)......11, 22

*In re Prudential Securities, Inc.*, 164 F.R.D. 362 (S.D.N.Y 1996)....................................22

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) .............8

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ....................24

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................15

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ..................................................8, 9, 17

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) ............................16

*McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005) .......................................12

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) .................................23

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ................................10, 11

*Newman v. Stein*, 464 F .2d 689, 693 (2d Cir. 1972) .......................................................20

iv

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......................20

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997) ........................17

*Prasker v. Asia Five Eight LLC*,
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) .........................17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................8

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ..................15

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).................................................9

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ........................11

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ........................14

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ..................21

*Torres v. Gristede's Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. September 29, 2006) ..........12

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ..................10

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ..................17

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir.2001)..................................................................11, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)........................................................13, 14, 21, 22

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)..............16

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988)......................22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ................................................................... passim

Fed. R. Civ. P. 23(b)(3)...............................................................................passim

Fed. R. Civ. P. 23(e)(2) ...................................................................................12

# INTRODUCTION

Plaintiff submits this Memorandum of Law in support of his Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiff's Motion for Final Approval"). For purposes of settlement only, Defendants do not oppose this motion. Other than for settlement purposes, Defendants do not concede in any way that class or collective action certification is appropriate in this case. The parties' $445,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiff seeks an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement and Release ("Settlement Agreement"); and (3) approving the FLSA Settlement.

On June 23, 2020, the Court took the first step in the settlement approval process by granting preliminary approval and directing that notice be mailed to class members. Docket No. 149. The members of the class have been notified of the terms of the settlement and their right to opt out of, or object to, it. For the reasons stated below, the Court should grant final approval.

# FACTUAL AND PROCEDURAL BACKGROUND

## I.    Procedural History

On August 28, 2018, Plaintiff Elvir Delijanin filed the instant lawsuit seeking to bring class and collective action claims against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including allegations of unpaid minimum wage claims. The Class and Collective Action Complaint ("Complaint") alleged that Defendants failed to pay Plaintiff and other hourly, front-of-house, tipped employees the proper wages for all hours worked due to time shaving and their taking of an invalid tip credit, resulting in unpaid minimum wages, and failed to

provide all hourly, front-of-house, tipped employees with proper wage statements and wage notices, among other claims. Plaintiff sought to recover, on behalf of himself and others he claimed were similarly situated, unpaid minimum wages, liquidated damages and penalties, and further requested to be awarded injunctive relief and attorneys' fees and costs.

## II.   Overview of Investigation and Discovery

On September 24, 2018, the parties were referred by the Court to the Southern District of New York's (S.D.N.Y.) Mediation Program; however, the possibility of settlement through mediation was too remote and the Parties requested to be removed from the program. Although the Parties ultimately chose to participate in a private mediation rather than the Court-Ordered S.D.N.Y. Mediation Program, the parties did engage in initial discovery with Defendants, producing thousands of pages of employment data and damages calculations. Defendants' document production during this time consisted of sample time records and payroll documents for the 102 Class Members who were employed at Defendants' Midtown East location, as well as the time and payroll records for Plaintiff Delijanin, and the personnel files, pay stubs, and earning reports for Opt-In Plaintiffs Omer Boci, Zehir Hasandekic, Neri Ferreira, Suleyman Kucur, and Hidajet Kanacevic. In addition, the Parties conducted depositions for Opt-In Plaintiff Omer Boci, Named Plaintiff Elvir Delijanin, and Defendant Zijo Music (Wolfgang's Steakhouse).

Plaintiff's counsel conducted a thorough investigation of the claims and defenses, focusing on the underlying merits of Class Members' claims, the damages to which they were entitled, if any, and the propriety of class certification. Plaintiff's counsel conducted in-depth interviews with Plaintiff and several Opt-In Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. Prior to mediation, Plaintiff's counsel used the data provided by Defendants and the Plaintiff's and Opt-In

Plaintiffs' recollections of their respective employment with Defendants to inform their calculations for damages of the back wages, statutory penalties, and liquidated damages owed to Plaintiff Delijanin and a class of hourly, front-of-house, tipped employees who were employed by Defendants from August 28, 2012 through June 23, 2020.

Based on the documents produced during discovery, Plaintiff was able to perform potential damages calculations and assess his claims, the class' claims, and Defendants' defenses. Prior to the December 19, 2019 private mediation, Plaintiff's Counsel performed a damages calculation for the following claims: (i) unpaid minimum wages due to the taking of an invalid tip credit and time shaving, and (ii) violations of the Wage Theft Protection Act ("WTPA"). After investigating the claims of the Plaintiff and the Class, in Plaintiff's and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened, for the following reasons:

(I)     Plaintiff and the Class brought a tip credit claim based on allegations of a practice of requiring employees to perform non-tipped tasks for more than 20% or two hours of their shift, resulting in unpaid minimum wages. However, in view of the guidance set forth by the Department of Labor in their 2009 Opinion Letter (designated as FLSA 2018-27), if the untipped work is directly related to tipped duties, or contributes to the tipped work, then the invalid tip credit claim resulting from such circumstances is invalidated.

(II)     Plaintiff's and Class Members' time shaving claim is highly risky as a review of Defendants' discovery production appears to indicate that employees' time was regularly tracked for the duration of the Relevant Time Period and the claim itself is heavily reliant on testimonial evidence. Although Plaintiff's counsel received one declaration by a manager, Hodo Alibegovic, stating that Defendants would require their employees to arrive and begin working one hour before

their scheduled shift without allowing them to clock in, Defendants are prepared to produce their own witnesses with opposing testimony. Thus, this claim becomes a factual debate between the Class and Defendants.

(III) Class Members also brought statutory claims with allegations that Defendants failed to provide proper wage notices and wage statements. However, under the Wage Theft Prevention Act, there are no statutory penalties for a failure to provide proper wage statements or wage notices if no other wage and hour violations existed, i.e. failure to pay the proper minimum wages. If the testimonies of Defendants' witnesses indicated that Class Members were only performing untipped tasks that were directly related to their tipped work, or that Class Members were not required to work before their scheduled shifts, then the ancillary claims under the Wage Theft Prevention Act would not be prevailing. Moreover, given the current societal shutdown caused by the coronavirus pandemic and its particularly devastating impact on restaurants worldwide, obtaining timely payment on this class settlement would be a complete victory and would put money in the hands of workers who need it.

Plaintiff's counsel performed damages calculations based on the payroll and employment records produced by Defendants during discovery and the plaintiff's testimony, and the total class damages were estimated to be approximately $2.3 Million. Under the "best case scenario" in which Plaintiff and the Class prevail on all of their claims (excluding liquidated damages), the $445,000 settlement amount represents a 19% recovery. However, assuming *arguendo* that the wage notices and wage statements are found to be compliant with the NYLL, the damages owed would be reduced to approximately $1.6 Million, thereby rendering the $445,000 settlement a 28% recovery for Plaintiff and the Class. Considering the risks of ongoing litigation, the defenses available to Defendants, and the inability of Defendants to withstand a greater judgment, the

$445,000 settlement amount provides Plaintiff and the Class with a recovery that is both fair and reasonable. Particularly, given the current societal shutdown caused by the coronavirus, obtaining any payment on a class settlement is a complete victory and puts money in the hands of workers who need it.

Based on the Settlement Administrator's calculations of the actual settlement allocations to Class Members, the highest settlement payment will be approximately $1,236.00 for 409 workweeks, and the average settlement payment will be approximately $475.59 for 157 workweeks. *See* the Administrator's Affidavit, ¶ 11. While, notwithstanding the foregoing, Plaintiff believes that he could ultimately establish Defendants' liability on some of his claims; to do so would require significant factual development. Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of final approval.

## III.    Settlement Negotiations, Further Discovery & Preliminary Approval

The Parties engaged in extensive negotiations. The formal parameters of the settlement were the result of contentious negotiations. In addition to numerous informal telephone conferences for settlement, the parties also engaged in two all-day private mediations with Allen Hurkin-Torres, Esq., of JAMS on December 19, 2019 and February 12, 2020, at which the parties reached a settlement in principle. During the months thereafter, the parties continued negotiating the final terms of the class settlement and reached an agreement on all terms, which they memorialized in the Settlement Agreement on June 19, 2020. If the parties had not been able to settle amicably, the parties would have engaged in further discovery, conducted depositions,

retained and deposed experts, Plaintiff would have moved for class certification pursuant to Fed. R. Civ. P. 23, and Defendants would have moved for de-certification of the FLSA collective and summary judgment, each at a significant cost to the parties.

Because of the uncertainty of Plaintiff's legal position and the uncertainty of obtaining class certification and maintaining class certification through trial, the Parties agreed to the settlement of $445,000.00. Class Counsel then prepared and submitted a preliminary approval motion, which, after amendments were made to the proposed Class Notice, was approved by the Court on June 23, 2020.

### SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $445,000 | The Fund covers all of Defendants' obligations under the settlement (exclusive of payroll taxes ordinarily borne by the employer on any W-2 payments under the settlement), including but not limited to any attorneys' fees and costs, administration fees, class members' awards, service awards to the Plaintiff and three Opt-In Plaintiffs, and release payments to Plaintiff and three Opt-In Plaintiffs, if any. |
| Attorneys' Fees | 1/3 of the Fund, $148,333.33 | Class Counsel has filed a motion for approval of attorneys' fees and reimbursement of expenses simultaneously with this motion. |
| Costs & Expenses | $7,383.00 | Filing fee, service fees, depositions, and Mediation fees. |
| Administration Fees | $40,000 | Admin. Fees are comparable to admin. fees usually paid to the settlement administrator in similar class settlement administrations with similar class sizes. |
| Service Awards | $30,000 in total | One $10,000 release payment to Named Plaintiff, one $7,500 release payment to Opt-in Plaintiff Nefail Ljubanovic, one $7,500 release payment to Opt-in Plaintiff Sauda Ljubanovic, and one $5,000 release payment to Opt-in Plaintiff Hajro Dodic, for their assistance to Class Counsel and service on behalf of the Class. Class Counsel has filed a motion for approval of these service awards simultaneously with this motion. |
| Release Payments | $30,000 in total | One $10,000 release payment to Named Plaintiff, one $7,500 release payment to Opt-in Plaintiff |

| | | |
|---|---|---|
| | | Nefail Ljubanovic, one $7,500 release payment to Opt-in Plaintiff Sauda Ljubanovic, and one $5,000 release payment to Opt-in Plaintiff Hajro Dodic, in exchange for each of their general global release of any potential claims against Defendants. Class Counsel has filed a motion for approval of these release payments simultaneously with this motion. |
| Reversion | Is there any reversion? | NO. Defendants have paid the full settlement amount of $445,000 into an account established by the Claims Administrator. All class members who do not opt-out will be mailed a check. With respect to any class members who do not opt-out, any unclaimed amounts remaining 150 days after the issuance of the settlement checks shall first be applied to (i) any unforeseen liabilities, claims, expenses, and costs, and then to (ii) a *cy pres* charitable donation to a charity or organization mutually determined by Plaintiff's Counsel and Defendants' Counsel. |
| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | NO. This is not a claims-made settlement, meaning that class members are not required to submit a claim form to receive a payment. All class members who do not opt-out will be mailed a check. |
| Allocation Formula | How will the individual settlement allocations be calculated? | Each class member will receive a share of the Fund. After deductions for attorneys' fees and expenses, service payments and the reserve fund, class members will be paid a proportionate share of the net settlement fund based on a formula taking into account the number of weeks worked for Defendants during the relevant period, as described in the Settlement Agreement § 3.1(A). |
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York wage and hour claims. Every class member who cashes his or her check will release Defendants from Fair Labor Standards Act claims. |

## ARGUMENT

## I. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the

settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006).

On June 23, 2020, the Court preliminarily certified the settlement class. The Court should now

grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the following class for purposes of effectuating the settlement: All individuals who were employed by any Wolfgang's Steakhouse location within the City of New York (*e.g.*, Wolf Eastside LLC; ZMF Restaurants LLC; Wolf Gotham LLC; Wolf on Broadway LLC; Wolf at Tribeca, Inc.; Wolf Westside LLC) as hourly, front-of-house, tipped employees at any time between August 28, 2012 and June 23, 2020, amounting to no more than 600 individuals, who do opt out of the settlement. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

**A. Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ."

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff clearly satisfies the numerosity requirement as there are 398 class members who have not opted out of the settlement.

**B. Commonality**

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiff's view, the required relationship between the claims of Plaintiff and those of the class clearly exists here.

This case involves numerous common issues. Plaintiff and the Rule 23 class members all bring common claims involving allegations that Defendants failed to pay Class Members their proper minimum wages due to their taking of an invalid tip credit and time shaving. Plaintiff also alleges that Defendants failed to provide Class Members with wage statements and wage notices in conformity with New York law. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ.

8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

## C. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims.  Plaintiff and the Rule 23 Class Members performed the same or similar job duties as tipped, hourly, front-of-house employees employed at Defendants' Wolfgang's Steakhouse restaurants in New York City at any time during the Class Period. Plaintiff makes the same allegations regarding unpaid minimum wages.  Plaintiff and Class members further allege they were not provided proper wage notices and proper wage statements as required under the NYLL.  Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiff satisfies the typicality requirement. *See Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims for overtime pay, spread of hours pay, and unlawful deductions arise from the same factual and legal

10

circumstances that form the bases of the class members' claims."); *Clark*, 2009 WL 6615729, at *4; *Frank*, 228 F.R.D. at 182.

## D. Adequacy of the Named Plaintiff

Named Plaintiff Elvir Delijanin is an adequate class representative. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiff satisfies the adequacy requirement because there is no evidence that Plaintiff and class members' interests are at odds – on the contrary, Plaintiff's interests are clearly aligned with the interests of the class. *See Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) (same); *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *2 (same).

**E. Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

**1. Common Questions Predominate.**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all tipped, hourly, front-of-house employees were subjected to the same unlawful policies, and that all tipped, hourly, front-of-house employees failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class

Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

**2. A Class Action Is a Superior Mechanism.**

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when

the class is being certified solely for the purpose of settlement.") Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted). 1023 (9th Cir. 1998); *Diaz*, 2010 WL 5507912, at *3. Plaintiff and class members have limited financial resources with which to prosecute individual actions. Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"). When, as here, "a settlement is negotiated prior to class certification…it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5. Even under

high scrutiny, procedural and substantive considerations support approving the proposed settlement.[1]

## A. The Proposed Settlement Is Substantively Fair.

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

## 1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with 430 putative class members with fact-intensive claims under both federal and state law. A

---

[1] Defendants deny Plaintiff's allegations and assert that they complied with all applicable laws and regulations at all times.

complicated fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner, weighing in favor of final approval.

**2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at \*1 (S.D.N.Y. May 15, 2003). Here, an experienced administration company under common control of Plaintiff's Counsel, Advanced Litigation Strategies, LLC, mailed the Court-approved notices ("Notices") of the class and collective action and settlement to all the class members for whom Defendants had provided an address, and attempted to locate an address or phone number for the remaining class members whose addresses had not been kept in Defendants' records. The Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, no class members have objected to the settlement, and twenty-four (24) class members, including one individual who was not on the Class List, have timely requested exclusion from the settlement. However, eight (8) of the 24 opt-outs were former clients of Class Counsel who retained Class Counsel's former Senior Counsel, William Brown. William Cafaro, Esq. represents eight of the opt-outs, all of which were Class Counsel's former clients and were apparently referred

by Mr. Brown. In addition, two (2) class members submitted requests for exclusion after the deadline to submit such requests had passed.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with the Plaintiff and the Opt-In Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. Plaintiff's Counsel obtained substantial amounts of data, including sample time records and payroll documents for the 102 Class Members who were employed at Defendants' Midtown East location, as well as the time and payroll records for Plaintiff Delijanin, and the personnel files, pay stubs, and earning reports for Opt-In Plaintiffs Omer Boci, Zehir Hasandekic, Neri Ferreira, Suleyman Kucur, and Hidajet Kanacevic. In addition, the Parties conducted depositions for Opt-In Plaintiff Omer Boci, Named Plaintiff Elvir Delijanin, and Defendant Zijo Music (Wolfgang's Steakhouse).

Following informal settlement discussions between the Parties, on June 19, 2020, the parties executed a settlement agreement, the terms of which were reached during the weeks that

followed their second formal, private, class-wide mediation held on February 12, 2020, overseen by Allen Hurkin-Torres, Esq. Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz*, 2010 WL 5507912, at *5; *deMunecas*, 2010 WL 3322580, at *5 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010) (same). Therefore, this factor also weighs in favor of final approval.

## 4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiff believes his case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery", *supra.*

Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of approval.

## 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants may argue on a decertification motion that individual questions preclude class certification. The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as which, if any, class members were required to perform non-tipped tasks and how often, what their primary language is, and what their individual understanding was regarding the content of the wage notices and wage statements provided by Defendants. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

## 6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).

It is unclear if Defendants would be able to withstand a greater judgment than that which would result from the $445,000 settlement. However, even if Defendants were able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Moreover, given

that the restaurant industry shutdown caused by the coronavirus pandemic, Defendants' business operations have been severely impacted, and the settlement amount achieved is an absolute success given the current market conditions. Therefore, Defendants' inability to withstand a greater judgment weighs in favor of the fairness of the Settlement.

**7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The $445,000 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiff succeeded on all claims at trial and survived an appeal. Each class member who does not opt-out of the settlement will receive a payment. The highest individual allocation amount is $1,236.00, and the average settlement payment will be $475.59. *See* the Administrator's Affidavit, ¶ 11. Given the inherent risks of litigation discussed above, in Plaintiff's counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiff would have achieved had he prevailed on all of his claims and survived an appeal due to Defendants' available defenses and current financial situation.

Considering the current market risks caused by the coronavirus, and the significant risks of litigation and maintaining class certification described above, it is likely that the judgment, if any, after trial will be much less than the agreed-upon settlement amount. Here, on a gross, per capita basis, the per person award would be approximately $1,118.09 to each Class Member, before fees and expenses are deducted, without the class members having to do anything. Additionally, in view of the $1.6 Million estimated damages, excluding liquidated damages and WTPA claims, the $445,000 settlement represents a 28% recovery for Plaintiff and the Class. This settlement amount is fair and reasonable in light of the defenses available to Defendants and the likelihood that

ongoing litigation would, at best, result in a marginal benefit for Plaintiff and Class Members considering the delay, additional expenses, and stress such litigation would entail.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

**B. The Proposed Settlement Is Procedurally Fair.**

**1. The Settlement Was the Result of Arm's Length Negotiation**

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Diaz*, 2010 WL 5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the parties, including two all-day mediations with Allen Hurkin-Torres, Esq. of JAMS on December 19, 2019 and February 12, 2020. Class Counsel spent significant effort to achieve the $445,000 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Through discovery, Class Counsel obtained, reviewed, and analyzed thousands of pages of electronic employment records, including payroll records and time records for Plaintiff,

Opt-In Plaintiffs, and class members. This comprehensive discovery enabled Class Counsel to perform class-wide damage calculations.

After several more months of litigation and negotiations following the February 12, 2020 mediation, the parties reached and executed a detailed final settlement agreement. Lee Decl. at ¶ 13. At all times during the settlement process, the parties negotiated on an arm's-length basis. Lee Dec. at ¶14. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *deMunecas*, 2010 WL 3322580, at *4.

### 2. The Distribution of Class Notice Satisfied Due Process

As 390 of the 421 Class Members received the class settlement notice by mail (approximately 93%), we believe that such result is adequate and satisfies due process. Moreover, similar deliverable rates have been approved in other class action settlements. *Carillo v. 27-39 East 30 Rest Corp., et al*., No. 13-cv-4491 (S.D.N.Y., Feb 2, 2015) (deliverable rate of 60% approved for final class fairness in restaurant case where many employees were transient and undocumented). While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14. Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each

case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail (as was done in the instant case), would in most cases be the 'best notice practicable.' *Id*. Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice all meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Ultimately, the Administrator successfully notified 390 of the 421 Class Members for a successful mailing percentage of 93%. Accordingly, the Court should find that at all times the efforts made by the Claims Administrator to locate and notify Class Members were diligent and resulted in a reasonable and adequate distribution of the mailed Notice of the proposed class settlement to the Class.

## III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiff also requests that the Court approve the settlement of his FLSA claims. He has brought his FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984),

*abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶¶ 14. During the litigation, counsel highly experienced in wage and hour law represented Plaintiff and Defendants.

As of September 6, 2020, the deadline for class members to object to the settlement, no individual has objected to the settlement. Lee Dec. ¶¶ 20.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; and (4) fully and finally dismiss the Litigation with prejudice.

Dated: November 13, 2020             Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: _/s/ C.K. Lee_____
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
_Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class_