UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ELVIR DELIJANIN, *individually and on behalf of*

*others similarly situated*,

                            Plaintiff,

         -against-

WOLFGANG'S STEAKHOUSE INC, *et al.*,

                            Defendants.

-----------------------------------------------------------------X

**OPINION AND ORDER**

**18-CV-7854 (LJL) (KHP)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/12/2021

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

       The above-captioned matter came before the Court on Plaintiff's unopposed motion for (i) Certification of the Settlement Class, (ii) Final Approval of the Class Action Settlement, and (iii) Approval of the FLSA Settlement. (ECF No. 178 (hereinafter, "Motion for Final Approval").) Also before the Court are Plaintiff's related and opposed motions to approve the service awards, release payments, and attorneys' fees and costs. (ECF Nos. 181, 183.) All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c) for purposes of these motions. (ECF No. 148.) For the reasons that follow, Plaintiff's Motion for Final Approval is GRANTED and all requested awards are approved and GRANTED as further discussed below.

**BACKGROUND AND PROCEDURAL HISTORY**

       On August 2, 2018 Plaintiff Elvir Delijanin commenced this action as a putative class action under Fed. R. Civ. P. 23 and as a putative collective action under the Fair Labor Standards Act. (ECF No. 1.) Plaintiff alleged Defendants violated various provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law Article 6, §§ 190 *et*

1

*seq.*, and Article 19, §§ 650 *et seq.*, by failing to pay the minimum wage and provide proper wage statements and notice to Plaintiff and Defendants' other similarly situated employees, seeking backpay, liquidated damages, and statutory damages.  The parties' proposed settlement resolves all claims in the action.  Defendants filed an Answer on October 29, 2018, disputing the material allegations and denying any liability in the proposed class and collective actions.  (ECF No. 32.)  The parties engaged in settlement negotiations, including private mediation, ultimately reaching a proposed class and collective settlement.

On June 23, 2020, the Court conditionally certified the settlement class, preliminarily approved the collective settlement, authorized the issuance of notice to Class Members and granted the parties' plan of allocation (collectively, the "Notice Packet").  (ECF No. 149.)  The Court also set a fairness hearing date, which it subsequently adjourned, and held on December 8, 2020.  (ECF Nos. 149, 151.)  Defendants provided the claims administrator, Advanced Litigation Strategies, LLC ("ALS"), with a list of Class Members which included, to the extent maintained by Defendants, the Class Members' names, employment dates, last known mailing addresses, phone numbers, and social security numbers.  (Decl. of Tara Nguyen, dated Nov. 13, 2020, ¶ 4, ECF No. 185-2.)  ALS determined that there were 421 unique Class Members in the class list, all of whom had available mailing addresses, and mailed them all Notice Packets via First Class Mail.  (*Id.* ¶¶ 4-5.)  ALS received 65 of the 421 Notice Packets back as undeliverable; ALS was able to identify new addresses for 30 of those 657, and re-mailed the Notice Packet to those addresses, all of which were successfully delivered.  (*Id.* ¶ 6.)  Ultimately, ALS successfully delivered 386 of the 421 Notice Packets to Class Members, leaving 35 undelivered.  ALS received a total of 24 requests for exclusion (including from one individual not on the class list)

from the settlement by September 6, 2020, the opt-out deadline, and 2 opt outs postmarked after the deadline.  (*Id.* ¶ 8.)  There were no Class Members who objected to the Settlement.  (*Id.*)  However, in an Order after the fairness hearing on December 12, 2020, the Court extended the time for the parties to attempt to provide notice to the 35 Class Members who did not receive the Notice Packet.  (ECF No. 189.)  The Court also determined that it would permit one of the late opt outs but not accept the other.  (*Id.* at 2-3.)  ALS, after determining that a duplicate existed among those Class Members, attempted to obtain addresses of the remaining 34 Class Members by calling them at the numbers Defendants provided, if available, and conducting a skip trace; 12 of the 34 individuals could not be reached in any way.  (Decl. of Tara Nguyen, dated Feb. 2, 2021, ¶ 4, ECF No. 192-1.)  ALS mailed the supplemental Notice Packet to 22 of the 34 those Class Members it could locate via First Class Mail; one of which ALS received back as undeliverable and the rest of which were successfully delivered.  (*Id.* ¶ 6.)  ALS did not receive any objections, but did receive one late opt out form.  Following the supplemental fairness hearing held on February 11, 2021, the Court determined that the late opt out would not be accepted.  (ECF No. 196.)  Thus, in summary, including the initial and supplemental mailings, 407 out of 420 Class Members received notice, with 25 permitted opt outs and no objections.

<b>DISCUSSION</b>

## I. *The Settlement*

The Settlement Agreement provides for a total settlement amount $445,000.  (Attach. 1 to Decl. of C.K. Lee, dated June 19, 2020, at § 3.1(A), ECF No. 147-1 (hereinafter, "Settlement Agreement" or "Settlement").)  Class Member payments are to be paid from a "Gross

Settlement Fund," which equals $445,000 less amounts approved by the Court for any service awards to the class representatives, attorneys' fees and costs awarded by the Court, and the settlement administrator's approved fees and costs. (*Id.*) The settlement administrator will distribute settlement payments to Class Members that did not opt out ("Active Class Members") pursuant to a formula set forth in Section 3.5 of the Settlement Agreement. Under the formula, Active Class Members recover a payment reflecting the weeks they were employed during the class period. (Settlement Agreement § 3.5(A).)

However, the Gross Settlement Fund will be reduced by the various awards Plaintiff seeks in his pending motions. Specifically, Plaintiff seeks (1) service awards for the class representatives, comprised of himself and three other class representatives, totaling $30,000 in service awards; (2) payments for release of all claims to the same four individuals in addition to their service awards, also totaling $30,000; (3) a payment in the amount of $40,000 to ALS as the settlement administrator; (4) $148,333.33 (or one-third of the Gross Settlement Fund) in attorneys' fees; and (5) $7,383 in costs. The Court addresses each of these requests below. However, before turning to that analysis, the Court first discusses the propriety of certifying this settlement class and the fairness of the collective settlement.

## II.     *Notice and Participation*

Pursuant to the Preliminary Approval Order(see ECF No. 149), ALS sent the Notice Packet by First Class Mail to each identified Class Member at his or her last known address (with returned notices to be re-mailed) on July 23, 2020. Supplementary Notice Packets were sent to those 34 Class Members identified during the December 2020 hearing on December 14, 2020, also via First Class Mail (with re-mailing of returned packages), pursuant to the Court's order

4

dated December 8, 2020.  The Court finds that the mailed notices fairly and adequately advised 390 of the 421 Class Members of the terms of the Settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearings.  Class Members were provided the best notice practicable under the circumstances.  The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.  The settlement administrator received 25 opt outs and no objections from Class Members.  (Nguyen Decl. ¶ 8, ECF No. 185-2; Nguyen Decl. ¶ 8, ECF No. 192-1.)  The settlement does not require Class Members to submit claim forms.

### III.     *Final Approval of Class Settlement*

Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearings, and the complete record in this matter, for good cause shown, the Court (i) certifies the Class Action for the purposes of this settlement; and (ii) grants final approval of the settlement memorialized in the Settlement Agreement, as construed and modified by this Opinion and Order.

#### A.     *Certification of Class Action For Settlement Purposes*

For purposes of settlement, the Court finds that the Class is suitable for certification, in that it satisfies all applicable requirements of Fed. R. Civ. P. 23(a) and (b).  The Class, as requested by Plaintiff in his moving papers, consists of:

> All individuals who were employed by any Wolfgang's Steakhouse location within the City of New York (e.g., Wolf Eastside LLC; ZMF Restaurants LLC; Wolf Gotham LLC; Wolf on Broadway LLC; Wolf at Tribeca, Inc.; Wolf Westside LLC) as hourly, front-of-house, tipped employees at any time between August 28, 2012

> and June 23, 2020, amounting to no more than 600 individuals, who do opt out of the settlement.

(Defs.' Mem. In Supp. of Motion at 7, ECF No. 179; *see also* List of Class Members, appended to this Order as Exhibit A (listing the Active Class Members meeting the class definition).) Insofar as the class comprises hundreds of individuals, the Court finds that the proposed class satisfies the numerosity requirements of Rule 23. *See* Fed. R. Civ. P. 23(a)(1). For purposes of settlement, the Court finds that there are questions of law or fact common to the Class Members—specifically, whether Defendants failed to pay tipped employees their proper minimum wage as a result of Defendants' invalid tip credit practice and time shaving, as well as failure to provide accurate wage statements and notice pursuant to New York labor law. *See* Fed. R. Civ. P. 23(a)(2). For purposes of settlement, the Court finds that the claims of Plaintiff are typical of the claims of the Class Members, as the Plaintiff and the Class Members were all subject to the same policies of Defendants, were all tipped, hourly, front-of-house employees employed at one of Defendants' restaurants in New York City, and did not receive proper wage or notice statements from Defendants during the Class Period. *See* Fed. R. Civ. P. 23(a)(3). The Court finds Plaintiff Elvir Delijanin and terminated Plaintiffs Hodo Alibegovic, Nefail Ljubanovic, and Jario Dodic (the three of whom voluntarily dismissed their claims against Defendants, (see ECF No. 103)), and are referred to herein as the "Opt-In Plaintiffs"), collectively, the "Class Representatives," do not have any interests that are different from or adverse to the Class Members, and therefore will fairly and adequately protect (and have fairly and adequately protected) the interests of the Class Members. *See* Fed. R. Civ. P. 23(a)(4). For purposes of settlement, the Court also finds that questions of law or fact common to Class Members predominate over any questions affecting only individual members and that a class action is

6

superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

      **B.**      ***Fairness, Reasonableness, And Adequacy of Settlement***

Under Fed. R. Civ. P. 23(e), to grant final approval of a settlement, the Court must determine whether the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). This requires consideration of both procedural and substantive fairness. The Court finds that the Settlement Agreement satisfies the requirement of procedural fairness, as it was the product of arms'-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery, conducted with the aid of this Court. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

With regard to substantive fairness, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

The Court finds that litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval. The response to the settlement has been positive—Class Counsel did not receive any objections to the Settlement

and only 25 of 407 Class Members receiving Notice opted out. This is a major indication of fairness. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-cv-5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003) (the response of the class "may itself be taken as evidencing the fairness of a settlement"). Thus, this factor weighs strongly in favor of approval. Regarding the third factor—discovery—the parties have completed enough discovery to recommend settlement. The focus of this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3rd Cir. 2004). The parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with Plaintiff and the Opt-In Plaintiffs to determine their total hours worked, wages received, nature of their employment, and other relevant information. Class Counsel further obtained a substantial amount of data from Defendants, including sample time records and payroll documents for the 102 Class Members employed at Defendants' Midtown East location, as well as the time and payroll records for Plaintiff Delijanin, and the personnel files, pay stubs, and earning reports for certain Opt-In Plaintiffs. The parties also conducted depositions of Plaintiff, one Opt-In Plaintiff, and Defendant Zijo Music.

Both the fourth and fifth factors—risk of establishing liability and damages—weigh in favor of final approval as well. A trial on the merits is inherently risky. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). Specifically here, Plaintiff identifies three areas that create particular risks: (i) FLSA guidance regarding untipped work for tipped employees could defeat the tip credit claim; (ii) the time shaving claim is not supported by the produced records and Plaintiff would therefore be reliant on testimonial evidence to contravene the documents; and (iii) the New York state claims giving

raise to statutory damages for failure to provide proper wage statements and notice is entirely reliant on establishing at least one other wage and hour violation. The sixth factor—focused on how difficult it may be to establish and maintain a class throughout a litigation—also weighs in favor of approval because the claims of the individual employees are vulnerable to an individualized analysis based on disparities among the employees as well as primary language differences which go to the individual Class Member's ability to understand the wage notices and statements. The seventh factor is neutral, as it is not clear if Defendants would be able to withstand a judgment greater than the $445,000 settlement amount, as the Defendants did not submit papers on this point. Finally, as to the last two factors, the substantial amount of the settlement, which represents 28% of the total damages sought, weighs strongly in favor of final approval. There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Active Class Members will receive, on average, $475.59, with the highest amount being $1,236. These figures represent roughly a 28% recovery of the total alleged damages which, particularly given the COVID-19 pandemic, and its outsized and decimating impact on the restaurant industry in New York City, represents a substantial and reasonable amount for Plaintiff to recover via settlement. In summary, the *Grinnell* factors weigh in favor of the settlement here, and the settlement is entitled to final approval.

### IV.     Approval of FLSA Settlement

The Court hereby certifies this case as a collective action for settlement purposes.  The collective consists of all hourly, tipped, front-of-house employees of Defendants' New York City restaurants employed from August 28, 2012 and June 23, 2020.

Having considered the standards for approval of a collective settlement, the Court hereby approves the FLSA settlement.  Because "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012), satisfaction of the *Grinnell* factor analysis will necessarily satisfy the standards of approval for the FLSA settlement.  "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Id.*  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982)).  "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.*  The Court finds that are significant *bona fide* factual disputes in this case, as discussed above with respect to the risks of proof faced by Plaintiff.  The Court therefore finds that the FLSA settlement was the result of contested litigation and arms'-length negotiation, and that the settlement terms are fair and appropriate.

### V.     Service Awards

Service payments "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the

plaintiff." *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-cv-4270 (PAC), 2009 WL 5851465, at *6 (S.D.N.Y. Mar. 31, 2009). Recognition payments are "particularly appropriate in the employment context." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). When, as here, the plaintiffs are "former or current employee[s] of the defendant . . . by lending [their] name to the litigation, [they have], for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Id.*; *see also Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."). Further, "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person" presents risks to the class representative as well. *Guippone v. BH S & B Holdings, LLC*, No. 09-cv-01029 (CM), 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011).

Here, there have been no objections to the proposed service awards, indicating the Class Representatives adequately represented the class. Additionally, the Class Representatives diligently represented the interests of the class, provided Class Counsel with important factual knowledge, and was involved in settlement negotiations. The staggered nature of the service awards reflects the increased amount of effort and risk expended by the individual Class Representatives, and, in light of the total settlement amount, is fair and reasonable. This Court therefore approves the proposed service awards of $10,000 for Plaintiff Elvir Delijanin, $7,500 each for Opt-In Plaintiffs Nefail Ljubanovic and Sauda Ljubanovic, and $5,000 Opt-In Hajro

Dodic, totaling $30,000 (or 6% of the total $445,000 settlement amount) in service awards. This amount shall be deducted from the Gross Settlement Fund.

### VI.     *Release Payments*

Courts also approve of payments for releases of remaining claims in wage and hour class and collective actions where named plaintiffs have other claims, such as claims for retaliation, sexual harassment, or discrimination, or provide general releases beyond the wage and hour claims at issue in the litigation. *See, e.g.*, *Baten v. Mr. Kabob Rest. Inc.*, No. 16-cv-9559 (VSB), 2019 WL 11274597, at *3 (S.D.N.Y. Oct. 18, 2019) (approving a release payment for a named plaintiff's general release); Order, *Maisanche v. Paola Painting and Renovations LLC et al.*, No. 16-cv-07697 (S.D.N.Y. May 3, 2018), ECF No. 54 (approving $20,000 release payment for named plaintiff's global release of all potential claims, including claim for retaliation); Order at 23, *Mariani et al. v. OTG Managements, Inc. et al.*, No. 16-cv-01751 (E.D.N.Y. Nov. 15, 2018) (approving $10,000 release payment in light of plaintiff's retaliation claim unrelated to the wage and hour allegations). The Settlement Agreement provides that every Active Class Member who does not opt out will release Defendants from all wage and hour claims asserted in this ligation, while the Class Representatives, in exchange for the release payments, agree to a full release of any and all claims that could be brought under law against Defendants. (*See* Settlement Agreement § 3.3(A)(ii).) The Settlement Agreement further provides that the Class Representatives will each receive a release payment, in exchange for their mutual termination and full release of all claims permitted by law as set forth in Section 3.3(A)(ii) of the Settlement Agreement (i.e., a general release). The release amounts are identical to the amounts requested as service awards. While the Class Representatives do not allege any potential

claims outside of the wage and hour claims, the Class Representatives are provided a general release of any and all claims against Defendants, which is far broader than the release required by all Active Class Members. As such, the Court approves the requested release payments, amounting to $30,000, which shall be deducted from the Gross Settlement Fund.

## VII. *Settlement Administrator Award*

The Settlement Agreement provides ALS to receive $40,000 in administration fees, which are to be deducted from the Gross Settlement Fund. The Court finds this amount to be reasonable and within the range charged by settlement administrators in similar cases and therefore approves these fees and costs and orders that $40,000 be deducted from the Gross Settlement Fund.

## VIII. *Attorneys' Fees*

Finally, Plaintiff's counsel seeks $148,333.33 in attorneys' fees, the same amount authorized by the Settlement Agreement, which represents one-third of the Gross Settlement Fund. (*See* Settlement Agreement § 3.2(A).) This amount is in line with amounts typically approved by courts in this Circuit for collective actions such as this. *See e.g.*, *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-cv-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District"); *Puglisi v. TD Bank, N.A.*, No. 13-cv-637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving one-third of settlement fund award of attorneys' fees in collective action FLSA case with a class settlement fund). This amount also is 1.7 times the lodestar amount, a multiplier consistent with that found to be reasonable in *Fujiwara* and in other cases in this Circuit. *See Fujiwara*, 58 F. Supp. 3d at 435 (finding that "a multiplier near 2 should, in most cases, be sufficient

13

compensation for the risk associated with contingent fees in FLSA cases"). Although a court generally may calculate reasonable attorneys' fees either by determining the lodestar amount or by awarding a percentage of the settlement amount, this Court's hybrid approach here is justified by the well-established principle that the lodestar calculation should serve as a "cross check" on the reasonableness of a requested percentage. *See id.* (citing *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000)). Here, counsel expended significant time in this case and brought this litigation to a successful conclusion for Plaintiff and the Class Members. Therefore, in light of the *Goldberg* factors, the Court finds the attorneys' fee award requested to be fair and reasonable. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216 (RLE), 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014) ("Reasonableness is he touchstone" of attorneys' fee award approval; applying the *Goldberger* factors). This attorneys' fee award shall be deducted from the Gross Settlement Fund.

### IX.    Costs

Plaintiff's counsel seeks $7,383 in costs. Pursuant to the Settlement Agreement, Class Counsel are also entitled to reasonable, Court-approved costs in addition to the attorneys' fee award . (Settlement Agreement § 3.1(A).) Courts in this District routinely approve of reasonable costs in connection with awards to Class Counsel. *See, e.g.*, *Fujiwara*, 58 F. Supp. 3d at 439. Here, Class Counsel's out-of-pocket expenses include filing fees, service fees, and fees related to mediation. In light of the necessity of these expenditures and the reasonableness of the amounts sought, this Court approves these costs and orders that $7,383 be deducted from the Gross Settlement Fund.

**CONCLUSION**

For the foregoing reasons, this Court certifies the Class and collective for purposes of settlement and approves the terms and conditions of the Settlement Agreement as construed and modified herein. The Gross Settlement Fund for payment to Active Class Members is $445,000. Plaintiff's requests for (1) service awards totaling $30,000; (2) release payments totaling $30,000; (3) a payment in the amount of $40,000 to ALS, the settlement administrator; (4) $148,333.33 in attorneys' fees; and (5) $7,383 in costs are GRANTED. Thus, the Court approves awards, totaling $255,716.33, which are to be deducted from the Gross Settlement Fund amount of $445,000.

The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement. Pursuant to Section 2.9 of the Settlement Agreement, the parties have additionally requested, and the Court hereby orders settlement administrator ALS to distribute settlement checks to all Active Class Members as listed in Exhibit A to this Order. Further, the Court orders the dismissal of the entire case on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in this Opinion and Order. This Opinion and Order shall serve as the final judgment of the Court in this litigation and shall bind and have *res judicata* effect with respect to all Active Class Members listed in Exhibit A. Without affecting the finality of this Order, the Court will retain jurisdiction over the case following the entry of this Order until completion of the terms contemplated by the Settlement Agreement.

Pursuant to Section 4.2 of the Settlement Agreement, neither this Order, the Settlement Agreement, nor any other documents or information related to the settlement of this action

shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party has prevailed in this case, or (c) that Defendants or others have engaged in any wrongdoing.

The parties shall abide by all terms of this Order and the Settlement Agreement, as modified by this Order.

**SO ORDERED.**

Dated: February 12, 2021
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge